ROBERT S. KELLER and JAMES A. CUMMING, Plaintiffs and Appellants, v. CLYDE A. TURNER and JUNE S. TURNER, Defendants and Respondents.

No. 11575.
Submitted March 11, 1969.
Decided April 22, 1969.
Rehearing Denied May 7, 1969.
453 P.2d 781.

Keller & Farlin, Kalispell, James A. Cumming, Columbia Falls, Murphy, Robinson & Heckathorn, Kalispell, I. James Heckathorn (argued) Kalispell, for appellants.

William Dee Morris (argued) Helena, for respondents.

MR. JUSTICE BONNER delivered the Opinion of the Court.

The plaintiffs, Robert S. Keller and James A. Cumming,

represented defendant June Turner in an action against defendant Clyde Turner brought in the district court of the eleventh judicial district, Flathead county on four counts of divorce, partition, resulting trust, and partnership accounting. Clyde Turner cross-complained for divorce, partition and resulting trust.

The district court awarded June Turner $1,500 attorneys' fees, which eventually were paid to plaintiffs; a divorce, a resulting trust as to one-half of the property solely in Clyde's name; partition as to all property; and alimony for one year. Subsequently the parties entered into an agreement to end the litigation whereby Clyde Turner agreed to pay $74,200 "as and for her support", and June Turner would relinquish all claims.

This case arose out of an alleged agreement made between the plaintiffs and June Turner with regard to the divorce and property actions. Sometime in 1966, June Turner consulted with plaintiff Cumming concerning a divorce. Mr. Cumming, for reasons not apparent from the record, asked plaintiff Keller to join with him in the action by Mrs. Turner against Mr. Turner. Mr. Keller testified that in December 1966 he was called to Mr. Cumming's office for a meeting with Mr. Cumming, Mrs. Turner and Mrs. Turner's daughter, Sandra. Mr. Keller further testified that he was not sure whether Mrs. Turner's complaint against Mr. Turner had been filed, but he did state they discussed his entering the case; they also discussed his fee and agreed his fee would be $25.00 per hour plus $200 per each day spent in court. He further testified that they also agreed he should receive a contingent fee of one-third of all property he secured for her in her claims for partition, resulting trust and accounting.

At the conclusion of the divorce action the lower court awarded the plaintiffs $1,500 attorneys' fees. Thereafter, plaintiff Keller consulted with Mrs. Turner in an attempt to enforce the alleged contingent fee agreement, apparently at the time

seeking a fee of $5,000. No settlement was made so thereafter the plaintiffs commenced this action.

The district court, the Hon. Nat Allen presiding, upon defendants' motion, concluded that the contingent fee agreement was illegal and void as against the public policy of the state of Montana under Coleman v. Sisson, 71 Mont. 435, 230 P. 582 (1924), and granted defendants' motion to dismiss. This appeal ensued.

The question before this Court is whether an attorney can enforce a contingent fee agreement for claims for relief concerning property which claims for relief are combined with an action for divorce, i.e., was the contingent fee agreement in the present case void as against the public policy of the state of Montana?

We think it was. In re Sylvester's Estate, 195 Iowa 1329, 192 N.W. 442, 443, 30 A.L.R. 180, 183 (1923), held:

"Ordinarily a contract between attorney and client, providing for the payment of a fee for legal services contingent upon the results obtained by the attorney, without more, is not an illegal contract, but one that is enforceable. (Citing cases)

"But the contract in the instant case involved more than the mere question of the payment of a contingent fee to appellees for legal services. It involved an agreement to pay an attorney's fee contingent upon the procurement of a divorce and the adjustment of property rights in connection therewith. Such a contract, having for its object such a purpose, is one that involves a matter of public policy. The proper maintenance of the marriage relation is a matter of public concern. In general, a contract, the object of which is the procurement of a divorce, is against public policy and void. (Citing cases)

. "A contract between an attorney and client, providing for the payment of a fee to the attorney contingent upon the procurement of a divorce for the client, is against public policy and illegal and void. Such a situation involves the personal interest of the attorney in preventing a reconciliation between

the parties, a thing which the law favors and public policy encourages. (Citing cases)"

See In re Smith, 42 Wash.2d 188, 254 P.2d 464 (1953); Opperud v. Bussey, 172 Okl. 625, 46 P.2d 319 (1935); Annotation 30 A.L.R. 188; 7 C.J.S. Attorney and Client § 186; 17 C.J.S. Contracts § 235.

In Coleman v. Sisson, 71 Mont. 435, 444, 230 P. 582, 585, relied on by the court below in dismissing the complaint, this Court said:

"Contracts like the one before us, when the attorney is to receive a portion of the money or property obtained from the husband, necessarily tend toward the alienation of husband and wife. The attorney is interested, not in reconciliation, but in alienation. His cupidity serves to direct his action. 'The sanctity of the marriage relation, the welfare of children, the good order of society, the regard for virtue, all of which the law seeks to foster and protect, are ample reasons why such a contract should be held to be contrary to public policy.' " (Citing In re Sylvester's Estate, supra, as well as others.)

█ The reasons enumerated above are still valid and we see no reason why the rule should be different now from what it was at the time Coleman was decided. Also we think the rule laid down here is applicable regardless of whether the contingent fee agreement is entered into before or after an action for divorce is commenced.

█ The plaintiffs in a second issue argue that they are entitled in any event to more than the $1,500 they were awarded by the court in the divorce action. We cannot agree. The court had before it all the facts with regard to the divorce, the resulting trust, the accounting and the partition, and decided that plaintiffs were entitled to $1,500. There is nothing before this court to justify our overturning that decision.

Therefore, the judgment below is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and JOHN CONWAY HARRISON and THE HONORABLE ARTHUR B. MARTIN, District Judge, sitting in place of JUSTICE FRANK I. HASWELL, concur.