NO. COA13-1301

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

TERRI LYNN ROBERTSON and MARY
DIANNE DANIEL,
    Plaintiffs,

v.                                        Brunswick County
                                          No. 07 CVS 106
STERIS CORPORATION, a Delaware
Corporation, et al.,
    Defendants.


Appeal by Plaintiffs from order entered 7 February 2013 by

Judge D. Jack Hooks, Jr., in Brunswick County Superior Court.

Heard in the Court of Appeals 9 April 2014.


    *The Lorant Law Firm, by D. Bree Lorant, and Womble,
    Carlyle, Sandridge & Rice, LLP, by Burley B. Mitchell, Jr.,
    and Robert T. Numbers, II, for Plaintiffs.*

    *No brief for Defendants.*

    *Young Moore and Henderson P.A., by Walter E. Brock, Jr.,
    and Andrew P. Flynt, for Intervenors G. Henry Temple, Jr.,
    and Temple Law Firm, PLLC.*


    STEPHENS, Judge.


*Procedural History and Factual Background*

In 2004, Plaintiffs Terri Lynn Robertson and Mary Dianne

Daniel were allegedly injured by the release of toxic liquids

and gases from a sterilization machine while they were at work

at Brunswick County Hospital. On 19 January 2007, G. Henry Temple, Jr., of the Temple Law Firm, PLLC, filed a complaint in Brunswick County Superior Court on behalf of Plaintiffs seeking damages for personal injuries against various defendants ("the underlying lawsuit"). No written contract regarding legal representation was executed between Temple and Plaintiffs. Plaintiffs asserted that Temple never discussed his contingency fee rate with them and Temple himself could not recall doing so, but Travis Harper, an attorney working for the Temple Law Firm, testified that Temple did tell Plaintiffs that "their individual recoveries would be after costs and attorney fees[.]" Temple did explain that, if he lost the case, he would pay all costs of the litigation. The underlying lawsuit was designated as exceptional by the Chief Justice pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts, and the Honorable D. Jack Hooks, Jr., was appointed as presiding judge.

When Plaintiffs first approached Temple in November 2006, Temple had concerns about the viability of their claims. He was particularly concerned that the statute of repose for product liability claims would operate to bar the lawsuit. Two other attorneys had already declined to take case, and Temple told

Plaintiffs he would need to investigate before making a decision. As the case proceeded, it proved even more complex and problematic than Temple had anticipated. Early on, Judge Hooks ruled that all product liability claims were barred by the applicable statute of repose, and Temple shifted his theory of the case to an attempt to prove inadequate maintenance of the sterilization machine. By the time of the first round of mediation in May 2010, the costs that Temple had incurred in pursuit of the lawsuit were approximately $150,000, but Plaintiffs were offered only $270,000 total to settle. Plaintiffs did receive workers' compensation benefits and settlements of several hundred thousand dollars each for their workers' compensation claims. During pendency of the litigation, claims against all defendants except Steris Corporation and Seal Master Corporation[1] were dismissed. Trial

---

[1] Seal Master produced the seals used by Steris in the manufacture of the sterilization machine which allegedly malfunctioned. The complaint in the underlying lawsuit refers to Seal Master as "Seal Master Corporation, aka Sealmaster, Inc." Some documents in the record on appeal, including the order appealed from, refer to this defendant as "Sealmaster." The company's website indicates that its proper name is "Seal Master Corporation," and we use that spelling here. *See* Seal Master Corporation, http://www.sealmaster.com/ (last visited 18 June 2014).

was set for 14 March 2011, and a second round of mediation was ordered for 2 March 2011.

Temple's research with two mock juries indicated that Plaintiffs would likely lose the case based on problems with Plaintiffs' credibility and other issues. Consultants working with Temple urged him to settle, and Temple reached a confidential settlement with Seal Master before mediation. During mediation, Temple also reached a confidential settlement with Steris for an amount the consultants considered surprisingly high. However, a dispute arose between Plaintiffs and Temple regarding Temple's fees and costs. Temple sought 40% of Plaintiffs' recovery after costs, and Plaintiffs felt that percentage was too high. Plaintiffs signed releases of their claims as to Steris and Seal Master, but due to the fee dispute, Plaintiffs refused to authorize Temple to deliver the signed releases or dismiss the underlying lawsuit. Plaintiffs terminated their relationship with Temple and retained attorney D. Bree Lorant in early September 2011.

The fee dispute and termination of his services led Temple to file motions in the underlying lawsuit to intervene and to recover attorneys' fees and costs on 5 October 2011. On 11 October 2011, Judge Hooks entered an "Order and Notice of

Hearing" stating, *inter alia*, that claims by Plaintiffs against Steris and Seal Master had "been announced as settled, but ha[d] not been dismissed as a number of issues ha[d] arisen beyond the matters" in the underlying lawsuit. The order specifically referenced the dispute regarding Temple's fees. On 26 October 2011, Plaintiffs agreed to dismiss the underlying lawsuit with prejudice. On 1 November 2011, a consent order was entered to allow dismissal of all claims against the remaining defendants as "a full and final settlement of the causes of action" had been reached in the underlying lawsuit.[2] However, the order did not resolve the fee dispute between Temple and Plaintiffs, and Temple's motions in the cause and to intervene remained pending.

On 20 August 2012, Plaintiffs moved to dismiss the matter or, in the alternative, to stay Temple's motions.[3] On 9 and 10

---

[2] The record on appeal includes notices of voluntary dismissal with prejudice as to claims against Steris signed by each plaintiff and dated 2 November 2011. Notices of voluntary dismissal with prejudice as to Seal Master signed by each plaintiff are also included in the record. However, although the notices as to Seal Master are signed by Temple, they do not bear a file stamp from the superior court.

[3] On 17 August 2012, Plaintiffs filed a separate civil action in Orange County Superior Court against Temple, asserting claims for constructive fraud, breach of fiduciary duty, duress and undue influence, negligent infliction of emotional distress, and declaratory relief. That action was dismissed without prejudice on 4 November 2013.

October 2012, Judge Hooks, under a new commission, held a hearing on the pending motions. By order entered 7 February 2013, Judge Hooks granted Temple's motion to intervene, denied Plaintiffs' motion to dismiss or stay proceedings, and awarded Temple reimbursement of certain costs and an attorneys' fee of one-third of Plaintiffs' net recovery in the underlying lawsuit less the amount of workers' compensation lien and common costs payments previously made by Temple. From that order, Plaintiffs appeal.

*Discussion*

On appeal, Plaintiffs make eleven arguments: that Judge Hooks erred in (1) hearing Temple's claims without having subject matter jurisdiction, (2) asserting authority over Plaintiffs without having personal jurisdiction, (3) asserting authority over Plaintiffs' settlement funds without having jurisdiction, (4) hearing and ruling on Temple's claims which should have been asserted in a separate action, (5) conducting a bench trial that deprived Plaintiffs of their due process rights, right of immediate appellate review, and a fair hearing on the merits, (6) finding Temple to be a real party in interest in the underlying action, (7) granting Temple's motion to intervene, (8) awarding Temple fees and costs in violation of

public policy, (9) awarding Temple fees and costs in violation of the North Carolina Rules of Professional Conduct, (10) awarding Temple fees and costs without legal authority, and (11) reaching conclusions of law that are not supported by the court's findings of fact. We affirm.

*I. Jurisdiction*

In Plaintiffs' first four arguments, they contend that Judge Hooks erred in hearing Temple's claims without having subject matter jurisdiction, personal jurisdiction over Plaintiffs, or jurisdiction over Plaintiffs' settlement funds, and assert that Temple was required to bring his claims for costs and fees against Plaintiffs in a separate action. Because these arguments are related, we consider them together and reject each contention.

> Whether a trial court has subject[]matter jurisdiction is a question of law, reviewed *de novo* on appeal. Subject[]matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. Subject[]matter jurisdiction derives from the law that organizes a court and cannot be conferred on a court by action of the parties or assumed by a court except as provided by that law. When a court decides a matter without the court's having jurisdiction, then the whole proceeding is null and void, *i.e.*, as if it had never happened. Thus the trial court's

> subject[]matter jurisdiction may be challenged at any stage of the proceedings.

*McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) (citations and internal quotation marks omitted; italics added).

Plaintiffs cite *In re Transportation of Juveniles* for the proposition that Judge Hooks had subject matter jurisdiction only over the issues raised in Plaintiffs' complaint which they contend did not include Temple's alleged entitlement to fees for his services. 102 N.C. App. 806, 808, 403 S.E.2d 557, 558 (1991) ("A court cannot undertake to adjudicate a controversy on its own motion; rather, it can adjudicate a controversy only when a party presents the controversy to it, and then, only if it is presented in the form of a proper pleading. Thus, before a court may act there must be some appropriate application invoking the judicial power of the court with respect to the matter in question.") (citation omitted). We find that case easily distinguishable.

There, a district court judge "entered an order [regarding who would transport juveniles in secure custody to and from court], *ex mero motu* and without an action or proceeding having been filed." *Id.* at 807, 403 S.E.2d at 558. We vacated the order because, "without an action pending before it, the

district court was without jurisdiction to enter an order." *Id.* at 808, 403 S.E.2d at 559. Here, in contrast, there *was* an action pending before Judge Hooks, to wit, the underlying lawsuit. As Judge Hooks noted in his order filed 7 February 2013, due to the dispute between Plaintiffs and Temple over Temple's costs and fees, the trial court was "unable to have final dismissals entered" after Plaintiffs and the remaining defendants reached a settlement. The November 2011 consent order providing for final dismissal of all pending claims between Plaintiffs and the remaining defendants pursuant to the mediated settlement placed the resulting settlement funds with the Clerk of Superior Court in Brunswick County pending resolution of the dispute over Temple's costs and fees.

For the same reason, we also reject Plaintiffs' assertions that, once they agreed to dismiss with prejudice their remaining claims in the underlying lawsuit, (1) Judge Hooks's "authority over this matter came to an end and he had no ability to keep the action alive beyond its natural life[,]" (2) Judge Hooks lacked jurisdiction over Plaintiffs or the settlement funds, and (3) Temple was required to bring any claims to recover his costs and fees in a separate action. As stated above, the consent order explicitly noted that the matter of Temple's costs and

fees had been raised in the underlying lawsuit and remained pending after release of the settlement funds to the Clerk.

Further, the trial court here followed the procedures this Court approved in a remarkably similar case, *Guess v. Parrott*, 160 N.C. App. 325, 585 S.E.2d 464 (2003). That appeal arose

> out of a dispute between attorneys for the firms of appellant Lloyd T. Kelso & Associates and appellee Melrose, Seago & Lay, P.A., as to entitlement to attorneys' fees stemming from the underlying case. The underlying case involved an automobile accident . . . in which [the] plaintiff Johnny Robert Guess, Jr., was injured when his vehicle collided with a tractor-trailer driven by [the] defendant Terry Anthony Parrott.
>
> Shortly after the accident, [the] plaintiff's father and brother . . . contacted the appellee law firm of Melrose, Seago & Lay, P.A., and made arrangements with Randal Seago to represent [the] plaintiff. [The] plaintiff and Randal Seago entered into a contingency fee agreement in which [the] plaintiff promised to pay appellee one-third of any recovery. Further, [the] plaintiff would reimburse appellee for expenses and costs advanced by it.
>
> Mr. Seago went about the task of representing [the] plaintiff. He filed a complaint . . . . The parties negotiated at mediation, . . . . [but] a settlement could not be reached . . . . Therefore, this matter went to trial . . . [with] a mistrial [eventually] declared.

Following the unsuccessful trial, Seago and other attorneys at appellee law firm were involved in negotiations with their client, [the] plaintiff, and [the] defendants. . . .

[The p]laintiff became dissatisfied with the representation provided to him by appellee law firm and informed them of such. Acceding to [the] plaintiff's wishes, appellee filed a motion to withdraw [which was granted]. . . .

Thereafter, [the] plaintiff secured the services of appellant Lloyd Kelso of Lloyd T. Kelso & Associates. [The p]laintiff entered into a contingency fee agreement with Kelso, promising to pay 35% of the amount recovered. . . .

The parties were ordered into mediation and eventually settled [the] plaintiff's case . . . . The attorneys' fees issue was not resolved in mediation.

*Id.* at 326-27, 585 S.E.2d at 465-66. The "appellee filed a motion [in the underlying case] requesting a portion of the attorneys' fees . . . ." *Id.* at 327, 585 S.E.2d at 466. Following a bench trial, the trial court entered an order awarding (1) costs to each law firm, (2) "the reasonable value of its services in *quantum meruit* . . . from the contingency fee funds generated by the successful settlement" to appellee, and (3) "the remaining funds from the generated fee" to appellant.[4]

---

[4] "[T]he theory of '*quantum meruit*,' an equitable remedy, . . . is defined by Black's Law Dictionary to mean 'as much as

*Id.* at 329, 585 S.E.2d at 467 (italics added). On appeal, appellant argued, *inter alia*, that appellee's motion had failed to state a claim upon which relief could be granted and that the trial court erred in resolving the fee dispute via a bench trial rather than before a jury. *Id.*

This Court held that "a claim by an attorney who has provided legal service pursuant to a contingency fee agreement and then [been] fired has a viable claim in North Carolina in *quantum meruit* against the former client or its subsequent representative" and that the filing of a motion in the underlying action, as Temple did here, was a proper procedure for asserting such a claim. *Id.* at 331, 585 S.E.2d at 468 (italics added). We further concluded that

> [t]he apportionment of attorneys' fees among the various lawyers who have represented a party has not been regulated by statute and is therefore within the province of the trial court. Accordingly, appellant had no right to have the reasonable value of appellee's services determined by a jury, as this issue is committed to the sound discretion of the trial court.

---

deserved.'" *Id.* at 332, 585 S.E.2d at 469 (italics added). "*Quantum meruit* is a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment." *Paul L. Whitfield, P.A. v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414 (1998).

*Id.* at 334, 585 S.E.2d at 470. Indeed, the *Guess* court observed that the trial judge in the underlying matter is "in the best position to make the determination of ability and skill of the parties, as well as to the difficulty of the case." *Id.* at 337, 585 S.E.2d at 472.

We see no meaningful distinction between the circumstances in *Guess* and those presented here.[5] As in *Guess*, the dismissed attorney filed a motion in the underlying action seeking to recover fees in *quantum meruit*, and the trial court conducted a

---

[5] We are not persuaded by Plaintiffs' suggestion that the holding in *Guess* does not apply here because Plaintiffs had not entered into a *written* contract for Temple's legal services. It is well-established that "recovery in *quantum meruit* is appropriate only where an implied contract exists, and that, where an express contract concerning the same subject matter is found, no contract will be implied." *Carolantic Realty, Inc. v. Matco Group, Inc.*, 151 N.C. App. 464, 471, 566 S.E.2d 134, 139 (2002) (citation and internal quotation marks omitted). Here, it was the very lack of a written agreement which led to the dispute over Temple's fees, leaving Plaintiffs and Temple with nothing but an implied contract regarding his entitlement to a percentage of Plaintiffs' recovery. Temple's representation of Plaintiffs having been terminated prior to finalization of the settlement of the underlying lawsuit, even had there existed a valid written contingency fee contract between Temple and Plaintiffs, Temple could not have collected his contractual fee under it. Rather, he would have had to proceed in *quantum meruit*, exactly as he did here. *See Guess*, 160 N.C. App. at 332-33, 585 S.E.2d at 469 ("Under current North Carolina law, . . . an attorney, working pursuant to a contingency fee contract, who is discharged without cause by his or her client, is entitled to recover the reasonable value of his or her services [in *quantum meruit*].").

bench trial to resolve the dispute. Accordingly, we overrule Plaintiffs' arguments regarding Judge Hooks's jurisdiction over the issue of Temple's fees, over Plaintiffs, and over the settlement funds, and we reaffirm that an attorney may properly bring a claim for fees in *quantum meruit* against a former client by the filing of a motion in the underlying action to be resolved by the trial court via a bench trial.

*II. Intervention*

Plaintiffs also argue that the trial court erred in various ways in its handling of Temple's motion to intervene: that (1) the trial court was required to rule on the motion to intervene before reaching the merits of the fee dispute, (2) the motion to intervene was untimely because it was not heard until five and one-half years after the filing of the complaint, and (3) Temple was not entitled to intervene as a matter of right.

As discussed *supra*, nothing in *Guess* indicates that a motion to intervene was filed by the appellee in that case; rather, this Court made clear that a dismissed attorney seeking legal representation costs and fees, like Temple, could pursue his claims against his former clients, like Plaintiffs, by the filing of a motion in the cause. *See id.* at 331, 585 S.E.2d at 468. Accordingly, both the motion to intervene and the

allowance of that motion in the 7 February 2013 order were wholly unnecessary to permit Judge Hooks to reach and resolve the merits of Temple's motion in the cause. Thus, even assuming *arguendo* that Judge Hooks did err in ruling on the motion to intervene, any such error would be of no consequence to his resolution of the fee dispute in his 7 February 2013 order. Accordingly, we need not consider Plaintiffs' arguments regarding the motion to intervene.

*III. Public Policy*

Plaintiffs also argue that the award of fees and costs to Temple was contrary to public policy in that the award was in violation of Rule 1.5(c) of the North Carolina Rules of Professional Conduct ("the Rules"), which provides that "[a] contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer . . . ." Revised Rules of Professional Conduct of the North Carolina State Bar, Rule 1.5(c) (2012). We are not persuaded.

The "breach of a provision of the [Rules] is not in and of itself . . . a basis for civil liability." *Baars v. Campbell Univ., Inc.*, 148 N.C. App. 408, 421, 558 S.E.2d 871, 879 (2002)

(citations and internal quotation marks omitted).  However, Plaintiffs contend that, because the Rules are adopted by our Supreme Court, *Beard v. The North Carolina State Bar*, 320 N.C. 126, 129-30, 357 S.E.2d 694, 696-97 (1987), they constitute a statement of public policy.  In turn, Plaintiffs contend that to award Temple costs and fees in *quantum meruit* violates the public policy requiring that contingency fees be in writing as stated in Rule 1.5(c).  *See, e.g.*, *Cansler v. Penland*, 125 N.C. 578, 579-80, 34 S.E. 683, 683-84 (1899) (holding that a contract which violates public policy is void and unenforceable).

However, the plain language of the Rules makes clear that the

> [v]iolation of a Rule should not give rise itself to a cause of action against a lawyer *nor should it create any presumption in such a case that a legal duty has been breached*. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy . . . . The [R]ules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. *Furthermore, the purpose of the Rules can be subverted when they are invoked by [the] opposing parties as procedural weapons*. . . . *Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a Rule*.

Revised Rules of Professional Conduct of the North Carolina State Bar, Rule 0.2[7] (emphasis added). Indeed, the comments to Rule 1.5 itself explicitly provide that a trial court's "determination of the merit of the petition or the claim [for attorney costs and fees] is reached by an application of law to fact and *not by the application of this Rule*." Revised Rules of Professional Conduct of the North Carolina State Bar, Rule 1.5, Comment 12 (emphasis added).

Plaintiffs cite several cases from this State in support of the proposition that

> there can be no recovery here on *quantum meruit* or otherwise. *Thompson v. Thompson*, 313 N.C. 313, 314-15, 328 S.E.2d 288, 290 (1985) (if there can be no recovery on a contract because of its repugnance to public policy, there can be no recovery on *quantum meruit*); *Richardson v. Bank of Am.*, N.A. 182 N.C. App. 531, 563, 643 S.E.2d 410, 430 (2007) (same); *In Re: Cooper*, 81 N.C. App. 27, 41, 344 S.E.2d 27, 36 (1986) (same); *Townsend v. Harris*, 102 N.C. App. 131, 132, 401 S.E.2d 132 (1991).

We do not find Plaintiffs' arguments to have merit.

We note that each of the cases cited by Plaintiffs concerns violations of public policy regarding the *content* of contracts rather than their *form*. *See Thompson*, 313 N.C. at 314, 328 S.E.2d at 290 (noting in *dicta* that a "contingent fee contract for legal services to be rendered in connection with matters

arising out of the domestic difficulties between [a husband and wife] was void and unenforceable exclusively by virtue of the fact that it violated the public policy of this State"); *Townsend*, 102 N.C. App. at 132, 401 S.E.2d at 133 (same); *In Re: Cooper*, 81 N.C. App. at 29, 344 S.E.2d at 29 ("[A]lthough a contingent-fee contract in a divorce, alimony, or child support proceeding is void, . . . a separate contingent-fee contract in an equitable distribution proceeding may be fully enforceable.") (citation omitted); *Richardson*, 182 N.C. App. at 563, 643 S.E.2d at 430 (noting that "the sale of [single-premium credit insurance] with loans greater than fifteen years [i]s void as against public policy").

As for *Thompson*, the primary case cited and relied upon by Plaintiffs as "controlling" on the outcome of this appeal, the only issue actually decided by our Supreme Court in that opinion was whether an order allowing intervention can be upheld when the underlying contract in the case has been declared void and unenforceable:

> *The Court of Appeals held that the contingent fee contract for legal services to be rendered in connection with matters arising out of the domestic difficulties between Ms. Thompson and her husband was void and unenforceable exclusively by virtue of the fact that it violated the public policy of this State. Review of that*

*decision has not been sought and therefore the validity of that decision is not before us.*

The opinion of the Court of Appeals on that point is the law of this case as it now stands before us. The contract being void, intervenors had no interest in the property or the transaction that was the subject of Ms. Thompson's suit. There was, therefore, no basis for the order allowing intervention. The Court of Appeals should have, therefore, vacated the order allowing intervention and dismissed the intervenors from that suit. It erred in not doing so.

*Although in view of our disposition of the case a decision on the point is not necessary, we note that it is generally held that if there can be no recovery on an express contract because of its repugnance to public policy, there can be no recovery on quantum meruit.*

The opinion of the Court of Appeals remanding the case for determination of the reasonable value of the services rendered prior to 16 February 1981, the date the attorneys were discharged, is reversed. The case is remanded to the Court of Appeals for remand to the District Court of Henderson County for an order vacating the order allowing intervention and for the entry of an order dismissing the action filed by the intervenors against Ms. Thompson.

313 N.C. at 314-15, 328 S.E.2d at 290 (citations omitted; emphasis added). Thus, as the Supreme Court explicitly acknowledged, its observations regarding *quantum meruit* were

purely *dicta*. *Id.* Plainly, then, *Thompson* is not controlling on that point.

In the opinion of this Court which was reversed the Supreme Court, wherein we considered as a matter of first impression whether contingent fees in domestic cases violated public policy, several policy considerations were cited, including "(1) the recognition that these contracts tend to promote divorce and (2) the lack of need for such contracts under modern domestic relations law [which provide adequate mechanisms for recovery of attorneys' fees by dependent spouses]." *Thompson v. Thompson*, 70 N.C. App. 147, 155, 319 S.E.2d 315, 320 (1984).[6] Of course,

---

[6] In an unfortunate reflection of the paternalism of the times, this Court also noted a third public policy which domestic contingent fee contracts would violate:

> Wives contemplating divorce are often distraught and without experience in negotiating contracts. Should contingent fee contracts between them and the attorneys they employ under such conditions become the usual fee arrangement, charges of overreaching and undue influence will be all too frequent. The public, the legal profession, and the bench would all suffer. We believe all will benefit by maintaining the present public policy of not enforcing such contracts no matter how freely and fairly entered into and how reasonable may be the fee thereby produced. The wise discretion of capable and experienced trial judges (aided by the evidence placed before

neither of these policy considerations is implicated here, and as discussed *supra*, the Rules explicitly state they are not intended to resolve disputed attorneys' fees.

On the other hand, case law from this Court and our Supreme Court makes clear that "an agent or attorney, [even] in the absence of a special contract, is entitled to recover the amount that is reasonable and customary for work of like kind, performed under like conditions and circumstances." *Forester v. Betts*, 179 N.C. 681, 682, 103 S.E. 209, 209 (1920); *see also Williams v. Randolph*, 94 N.C. App. 413, 380 S.E.2d 553 (1989) (holding that an attorney could recover a reasonable fee even though the attorney and client had no written or oral contingency fee agreement). Indeed, the fact that an agreement for legal representation was determined "to be in violation of the Rules of Professional Conduct and unenforceable is of no consequence" where an attorney's right of recovery arises in

_____

> them by the parties prior to the time the court fixes the fee to be paid by the husband) can be relied upon to assure every attorney an adequate fee and thus assure every wife adequate representation.

*Id.* at 156, 319 S.E.2d at 321 (citation and internal quotation marks omitted). Needless to say, the stereotypes and assumptions which underlie this supposed justification can no longer be considered the public policy of our State.

*quantum meruit*, because the trial court's award of fees is based "upon the reasonable value of [the attorney's] services" and not upon the failed agreement. *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, __ N.C. App. __, __, 730 S.E.2d 763, 766 (2012). We can find no meaningful distinction between the circumstances presented in this appeal and those in *Crumley & Assocs., P.C.*, a case which Plaintiffs fail to cite, let alone distinguish.

In sum, the Rules, precedent from our Supreme Court, and decisions by previous panels of this Court all reject the argument made by Plaintiffs here. *See In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Accordingly, Plaintiffs' argument is overruled.

*IV. Mathematical errors*

In their final argument, Plaintiffs contend that conclusion of law 5 of the 7 February 2013 order, stating the total amount of Temple's petitioned-for costs which it was disallowing, is not supported by finding of fact 46, which describes certain

costs charged to Temple as a sanction for his actions during discovery. However, a careful reading of Plaintiffs' argument and the record before us reveals that Plaintiffs are actually contending that the court abused its discretion in determining the sanction to impose. We disagree.

> It is well-settled that Rule 37 [of the North Carolina Rules of Civil Procedure] allowing the trial court to impose sanctions is flexible, and a broad discretion must be given to the trial judge with regard to sanctions. Our Supreme Court has stated that a ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.

*Rose v. Isenhour Brick & Tile Co.*, 120 N.C. App. 235, 240, 461 S.E.2d 782, 786 (1995) (citations, internal quotation marks, and some brackets omitted), *affirmed*, 344 N.C. 153, 472 S.E.2d 774 (1996).

At the hearing on Temple's motion in the cause, the trial court asked Temple about an incident during discovery when Temple failed to timely disclose a change in certain experts he intended to call. As a result, the trial court had sanctioned Temple by requiring that he pay the costs of deposing the newly disclosed witnesses rather than shifting those costs to Plaintiffs. At the motion hearing, Temple acknowledged the

sanction, and, when the court asked Temple what the amount of the sanction was, Temple responded, "[$]28,000."

Later during the hearing, the following exchange occurred between Temple and one of his attorneys:

> Q[.] Now, did you undertake to prepare separate schedules to identify those deposition expenses that were incurred for the deposition of the plaintiffs' experts that Judge Hooks ordered be borne by the Temple Law Firm?
>
> A[.] Yes.
>
> . . . .
>
> Q[.] I show you two separate exhibits, [38] and [39]. Look at those and tell us what those are, please.
>
> A[.] Exhibit Number [38] lists out the plaintiff expert deposition expenses of fees, transcripts, and videographer expenses. And [39] lists out their plaintiff expert deposition travel expenses.
>
> Q[.] Okay. So [38] includes both the deposition testimony time as well as the deposition transcript and video charges, is that correct, for each of those plaintiff experts that the Temple Law Firm was ordered to pay for; is that correct?
>
> A[.] Yes, that's my understanding.
>
> Q[.] Okay. And then Exhibit [39] represents the travel — well, tell us what [39] represents.

A[.] It represents the expenses that the experts incurred to travel to the depositions listed on the chart.

Q[.] Okay. And so what are the total expenses for the experts, their deposition testimony and their transcripts and videos, as reflected on Exhibit [38]?

A[.] $21,686.05.

Q[.] Okay. And what are the total travel expenses incurred by those experts to give those depositions, as reflected on Exhibit [39]?

A[.] $6,630.75.

As Plaintiffs note, the total of the expenses listed in the two exhibits is $28,316.80, an amount quite close to the figure Temple himself provided in response to the court's question early in the hearing. However, in finding of fact 46 of the 7 February 2013 order, the trial court disallowed only a portion of that total amount:

> 46. As a result of the manner in which [P]laintiffs' counsel disclosed and then changed experts, the [trial c]ourt as a sanction required the costs of deposing newly disclosed experts (by Plaintiffs) be paid by [P]laintiffs['] counsel. Those costs were as follows:
>
> $ 750.00: Cynthia Wilhelm Deposition fee
> $ 2,000.00: Ward Zimmerman Deposition fee
> $ 2,800.00: Fred Hetzel Deposition fee 8/26/10
> $ 2,800.00: Fred Hetzel Deposition fee 11/3[/]10

> $ 3,500.00: Fred Hetzel Deposition fee 11/9/10
> $ 755.33: Ward Zimmerman Deposition related charges[]
> $ 1,364.67: Fred Hetzel deposition expenses
> $ 986.41: Jim Dobbs Depo travel expenses
> $ 543.84: Jim Dobbs Depo travel expenses
> Total:    $15,500.25
>
> As it was always the intent of the [trial c]ourt that counsel bear this expense, it should not be allowed to be shifted to [P]laintiffs.

As noted *supra*, "broad discretion must be given to the trial judge with regard to sanctions" and such a determination will not be upset absent "a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id.* While Temple's testimony and exhibits 38 and 39 reflected costs of approximately $28,000 connected with the newly disclosed experts, the trial court itself never stated the exact amount of the expenses it planned to shift to Temple as a sanction. After reviewing the exhibits, the court, in its discretion, apparently decided that only some of those costs would be borne by Temple. Given the specificity of finding of fact 46 in breaking down and listing the specific expenses to be included in the sanction, we see no abuse of the trial court's discretion. We explicitly reject Plaintiffs' assertion that the trial court was required to provide an "explanation as to why the additional $12,816.55

[was] not included."  Finding of fact 46 contains an entirely sufficient explanation of the court's decision to sanction Temple.  This argument is overruled.

The 7 February 2013 order is

AFFIRMED.

Judges ERVIN and MCCULLOUGH concur.