In re Krispy Kreme Doughnuts, Inc. S'holder Litig., 2018 NCBC 58.

STATE OF NORTH CAROLINA

COUNTY OF FORSYTH

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16-CVS-3669 (Master File); 16-CVS-3651;
16-CVS-3239; 16-CVS-3102; 16-CVS-3101

In re Krispy Kreme Doughnuts, Inc.
Shareholder Litigation

## ORDER & OPINION ON MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES

1.      THIS MATTER is before the Court on Plaintiffs' Motion for Approval of Attorneys' Fees and Expenses ("Motion").  For the reasons discussed below, the Court GRANTS in part and DENIES in part the Motion.

*Levi & Korsinsky LLP, by Donald J. Enright (pro hac vice), and Ward Black Law, by Janet W. Black, Nancy R. Meyers, and Megan E. Kunz, for Plaintiffs Ronnie Stillwell, Patricia Horton, Barbara Grajzl, Stuart Bonnin and Melissa Weers.*

*Womble Bond Dickson (US) LLP, by Ronald R. Davis and Brent F. Powell, and Simpson Thacher & Bartlett LLP, by Peter E. Kazanoff (pro hac vice) and Craig S. Waldman (pro hac vice), for Defendants Krispy Kreme Doughnuts, Inc., Tim E. Bentsen, Charles Blixt, Lynn Crump-Caine, Carl E. Lee, Jr., C. Stephen Lynn, Robert S. McCoy, Jr., James H. Morgan, Andrew J. Schindler, Lizanne Thomas, and Tony Thompson.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Clifton L. Brinson and Donald H. Tucker, and Skadden, Arps, Slate, Meagher, & Flom LLP, by Paul J. Lockwood (pro hac vice), Joseph O. Larkin (pro hac vice), and Alyssa S. O'Connell (pro hac vice), for Defendants Cotton Parent Inc. and Cotton Merger Sub Inc.*

Gale, Chief Judge.

## I.   INTRODUCTION

2.      Krispy Kreme Doughnuts, Inc. ("Krispy Kreme") and JAB Beech, Inc. ("JAB" and with Krispy Kreme, "Defendants") announced a merger on May 9, 2016

("Merger"). Shortly thereafter, several Krispy Kreme shareholders, represented by different law firms, filed multiple putative class action lawsuits in state and federal courts challenging that transaction. In advance of a shareholder vote on the Merger, all parties reached a global settlement, whereby Krispy Kreme provided a supplemental proxy with additional disclosures in exchange for a release of Plaintiffs' Merger-related claims without any monetary payment to the class ("Settlement"). The shareholders then approved the Merger.

3.    As a part of the Settlement, the parties executed a stipulation and agreement of compromise ("Stipulation"), whereby Defendants acknowledged that Plaintiffs' counsel are entitled to reasonable attorneys' fees and expenses, subject to court approval. The Settlement was not conditioned on the Court awarding attorneys' fees or expenses. On January 2, 2018, the Court approved the Settlement, but reserved consideration of any award of attorneys' fees or expenses pending Levi & Korsinsky LLP, Rigrodsky & Long, P.A., and Ward Black Law's submission of additional materials.

4.    The Court received these additional materials, which included written fee agreements between the Plaintiff putative class representatives and their counsel. The Court then requested supplemental briefing on whether these fee agreements comply with the Revised Rules of Professional Conduct of the North Carolina State Bar (the "RPC"), particularly RPC 1.5(c) and RPC 1.8(e).

5.    Plaintiffs' counsel seek a total award of attorneys' fees and expenses of $350,000. For reasons discussed below, the Court determines that a reasonable

award of attorneys' fees is $150,000 and that Plaintiffs' counsel reasonably incurred total expenses of $19,531.76.

6. However, the Court has further examined whether noncompliance with the RPC should bar either the award of attorneys' fees or litigation expenses. The fee agreements are contingent fee contracts, and while RPC 1.5(c) directs that any contingent fee agreement state a percentage by which counsel will share in any monetary recovery by the plaintiff—which the fee agreements do not uniformly do— the fee agreements provide that any fee award is subject to court approval. While noting its concerns under RPC 1.5(c), the Court concludes that no public policy bars enforcing the Stipulation allowing Defendants' payment of a reasonable, Court-approved fee award. However, the Court concludes that the underlying fee agreements fail to comply with RPC 1.8(e) because they hold Plaintiffs harmless at the inception of the litigation from any potential liability for expenses, and that any expense recovery would violate the public policy on which RPC 1.8(e) is based.

7. Accordingly, the Court awards Plaintiffs' counsel attorneys' fees of $150,000 to be paid by Defendants. Plaintiffs' counsel shall recover no costs or expenses of the litigation.

## II. PROCEDURAL AND FACTUAL BACKGROUND

8. The Court fully summarized the procedural and factual background of this litigation in its January 2, 2018 Order & Opinion, *In re Krispy Kreme Doughnuts, Inc. S'holder Litig.*, No. 16 CVS 3669, 2018 NCBC LEXIS 1, at *2–7 (N.C. Super. Ct. Jan. 2, 2018), and includes here only information pertinent to the Motion.

9.      Stuart Bonnin, Barbara Grajzl, Patricia Horton, Ronnie Stillwell, Melissa Weers, James Graham, Jonnie Lomax, and Harold Lomax (collectively, "Plaintiffs") are former Krispy Kreme shareholders who sued as representatives of a putative class.

10.      Pursuant to written agreements, Plaintiffs retained the law firms of Levi & Korsinsky LLP, Rigrodsky & Long, P.A., Brodsky & Smith, LLC, The Weiser Law Firm, P.C., Brower Biven, WeissLaw LLP, Faruqi & Faruqi, LLP, or Monteverde & Associates, PC as their primary lead counsel. Ward Black Law, The Hausler Law Firm, PLLC, Wilson & Helms LLP, or Erwin Bishop Capitano & Moss, P.A. served as local counsel. The Court refers to these firms collectively as "Plaintiffs' Counsel."

11.      The Court appointed the firms of Levi & Korsinsky and Rigrodsky & Long as Co-Lead Counsel. The Court's discussion is based on the fee agreements of these two firms ("Fee Agreements").

12.      Levi & Korsinsky's fee agreement states that

> [w]e agree to advance all expenses in the litigation, which means that you are not liable to pay any of the expenses of the lawsuit, whether attorney's fees or costs. Regardless of the result, we will never ask you to directly pay for any attorney's fees or costs. Should we obtain a favorable result, we may ask the court to award us compensation to be paid by the defendants or as a portion of any class benefit, but, again, we will never ask you to directly pay any of the costs of this litigation.

(Pls.' Supp'l Mem. L. Further Supp. Mot. Approval Attorneys' Fees Expenses Ex. 1B, at 2, ECF No. 62 ("Jan. Supp'l Br.").)

13.      Rigrodsky & Long's fee agreement states that

> [t]he Firm will represent [y]ou on a fully contingent basis. If the action creates a benefit for the Company or its shareholders (monetary or

otherwise), the Firm will seek an award of fees. In the event of a settlement, the Firm will seek to have their attorney's fees paid by agreement with the defendants, subject to Court approval, or otherwise by application to the Court. Alternatively, defendants may agree to allocate additional monies to cover our attorney's fees and expenses, subject to Court approval. . . . The Firm agrees to pay all costs and expenses that they deem necessary to prosecute this case.

(Jan. Supp'l Br. Ex. 2B, at 2.)

14. Plaintiffs brought the various actions in May and June 2016. The Court consolidated the actions on July 11, 2016.

15. On July 14, 2016, Plaintiffs filed a motion for a preliminary injunction, seeking to enjoin the Merger until Krispy Kreme made supplemental disclosures.

16. The next day, on July 15, 2016, the parties entered into a memorandum of understanding ("MOU") to settle all of the actions based on Defendants' agreement to provide supplemental disclosures prior to a shareholder vote on the Merger. Krispy Kreme filed the supplemental disclosures that same day. The shareholders approved the Merger on July 27, 2016.

17. On June 20, 2017, the parties executed the Stipulation, acknowledging that Plaintiffs' Counsel would seek fees but, rather than stating the amount of any request, providing that the parties would attempt to agree on an amount pursuant to continuing negotiations. (Stipulation and Agreement of Compromise, Settlement and Release 13–14, ECF No. 44 ("Stipulation").)

18. The parties later agreed that Plaintiffs would seek, and Defendants would not oppose, a total award of $350,000, inclusive of attorneys' fees and expenses. (Pls.' Mem. L. Supp. Mot. Approval Attorneys' Fees Expenses 5, ECF No. 49.)

19.     On July 11, 2017, Plaintiffs filed a Motion for Preliminary Approval of Settlement, which the Court granted on July 13, 2017.

20.     On October 23, 2017, Plaintiffs filed a Motion for Settlement Approval and the Motion.  Prior to that date, at least Levi & Korsinsky, Brodsky & Smith, The Weiser Law Firm, Brower Biven, and WeissLaw had secured written consent from their clients to the forthcoming fee request and to a proposed fee-allocation agreement to which Plaintiffs' Counsel had agreed.

21.     The memorandum supporting the Motion stated that Plaintiffs' Counsel had, as of October 23, 2017, incurred expenses of $19,531.76 and devoted 700.85 hours to the litigation, not including paralegal time.  Plaintiffs' Counsel contend that their typical hourly rates would support a lodestar of $458,911.75 based on these hours.  (Pls.' Mem. L. Supp. Mot. Approval Attorneys' Fees Expenses 7–8.)

22.     On October 30, 2017, a member of the proposed settlement class, James Snyder ("Objector"), filed a Submission of Objections and Notification to Appear at Settlement Hearing, which focused on his opposition to the award of attorneys' fees.

23.     On December 5, 2017, after notice was given to putative class members, the Court held a settlement hearing, at which the parties, through counsel, and Objector appeared and were heard.  Objector stated that he did not oppose the Merger or the Settlement to the extent it allowed the Merger, but that he did object to any award of attorneys' fees.

24.     On January 2, 2018, the Court approved the Settlement, appointed Rigrodsky & Long, P.A. and Levi & Korsinsky LLP as Co-Lead Counsel and Ward

Black Law as Liaison Counsel, and reserved its consideration of Plaintiffs' Counsel's request for a fee award or recovery of costs pending its receipt of additional materials.

25. On January 12, 2018, Plaintiffs submitted a Supplemental Memorandum of Law in Further Support of their Motion for Attorneys' Fees and Expenses, with supporting materials. The 188-page document included many of the fee agreements between Plaintiffs and Plaintiffs' Counsel as well as the underlying time records for all of Plaintiffs' Counsel except Wilson & Helms LLP and Erwin Bishop Capitano & Moss, P.A.

26. Plaintiffs' Counsel did not increase their request for a fee award, but reported that, as of January 12, 2018, at least thirty attorneys across twelve firms had now spent over 826 hours total in connection with the litigation (excluding paralegal work), which they contend would result in a lodestar of $533,038.00 based on their normal hourly rates. (Jan. Supp'l Br. 8; Jan. Supp'l Br. Ex. 11.)

27. Plaintiffs' Counsel submitted a supplemental brief in support of the Motion on April 9, 2018, addressing the Court's inquiry whether the Fee Agreements comply with the RPC. Objector and Defendants have neither submitted materials regarding, nor stated any position on, whether the Fee Agreements violate the RPC.

28. The Motion is ripe for resolution.

### III. ANALYSIS

**A.** **The Court May Award Fees and Expenses Pursuant to a Fee-Shifting Provision in a Class-Action Settlement Agreement.**

29. As a general rule, attorneys' fees are not recoverable, either as damages or costs, absent statutory authority. *See, e.g.*, *Stillwell Enters., Inc. v. Interstate*

*Equip. Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814 (1980). Notwithstanding this rule, the Court of Appeals has held that a court may award attorneys' fees agreed upon in a class-action, disclosure-based settlement without additional statutory authority, such that "parties to a class action may agree to a fee-shifting provision in a negotiated settlement that is . . . subject to the trial court's approval." *Ehrenhaus v. Baker*, 243 N.C. App. 17, 30, 776 S.E.2d 699, 708 (2015) ("*Ehrenhaus II*"); *see also In re Pike Corp. S'holder Litig.*, No. 14 CVS 1202, 2015 NCBC LEXIS 95, at *17 (N.C. Super. Ct. Oct. 5, 2015) (citing *Faulkenbury v. Teachers' & State Emps.' Ret. Sys. of N.C.*, 345 N.C. 683, 696, 483 S.E.2d 422, 430 (1997) and *Ehrenhaus II*, 243 N.C. App. at 30, 776 S.E.2d at 708) ("The long-standing general rule . . . that a court can award attorneys' fees to a prevailing party only if the court has the statutory authority to do so[,] . . . does not govern a settlement where there is no 'prevailing party,' and . . . the parties have agreed to a fee-shifting provision in a voluntary settlement."). Under *Ehrenhaus II*, a class settlement including a valid fee-shifting procedure establishes a contractual basis for the Court's authority to award fees. *See In re Newbridge Bancorp S'holder Litig.*, No. 15 CVS 9251, 2016 NCBC LEXIS 91, at *36 (N.C. Super. Ct. Nov. 22, 2016) (finding that the parties' express agreement that defendants would pay plaintiffs' counsel for their attorneys' fees, costs, and expenses established a "contractual basis for the Court's authority to make an award"). Accordingly, this Court has awarded attorneys' fees in disclosure-only settlements pursuant to fee-shifting agreements. *See id.* at *44–48 (collecting cases and approving a fee award in

a disclosure-based settlement); *Corwin v. British Am. Tobacco PLC*, No. 14 CVS 8130, 2016 NCBC LEXIS 14, at *15 (N.C. Super. Ct. Feb. 17, 2016) (same).

30. Paragraph 10 of the Stipulation is such a fee-shifting provision. It provides that "Plaintiffs' counsel will petition the Court to approve the amount of attorney's fees and expenses," and that "Defendants and their counsel will not object to an application for approval of fees and expenses" that does not exceed the amount negotiated by the parties. (Stipulation 13–14.) The parties later agreed that Defendants would not contest a Court-approved award up to $350,000. (Pls.' Mem. L. Supp. Mot. Approval Attorneys' Fees Expenses 5.)

31. The Court is not bound to award the full amount agreed to, but must limit any award to an amount that is "fair and reasonable." *Ehrenhaus II*, 234 N.C. App. at 30, 776 S.E.2d at 708. In making that determination, the Court assesses both "the materiality and value of the disclosures obtained against the amount of attorneys' fees requested" and whether the award comports with the factors enumerated in RPC 1.5(a). *Newbridge*, 2016 NCBC LEXIS 91, at *37.

32. This Court has "expressly advise[d] the practicing bar that judges of the North Carolina Business Court . . . may be prepared to apply enhanced scrutiny . . . to the approval of . . . motions for attorneys' fees" in disclosure-based settlements. *Newbridge*, 2016 NCBC LEXIS 91, at *4; *see also Krispy Kreme*, 2018 NCBC LEXIS 1, at *21 (noting this Court's willingness to "exercise a more searching inquiry" when examining a fee request than when deciding a motion for settlement approval).

33.     When approving the Settlement, the Court viewed the value of the supplemental disclosures through the lens of whether they were adequate to serve as consideration for the Stipulation and the accompanying release of class claims. *Krispy Kreme*, 2018 NCBC LEXIS 1, at *25. Here, the Court compares the value of those disclosures to the amount of attorneys' fees requested and the reasonableness of those fees as measured by the factors enumerated in RPC 1.5(a).

## B.     RPC 1.5(a) Favors an Award of Reasonable Attorneys' Fees.

34.     RPC 1.5(a) states that

[a] lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee or charge or collect a clearly excessive amount for expenses. The factors to be considered in determining whether a fee is clearly excessive include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

N.C. Rev. R. Prof. Conduct 1.5(a).

35.     In a different class settlement, the Court found reason to limit its consideration to time spent before the parties executed a memorandum of understanding. *Corwin*, 2016 NCBC LEXIS 14, at *14. However, in this action, the Court, in its discretion, concludes that it should consider time spent prior to the filing of the Motion for Approval of Class Settlement on October 23, 2017. As noted above, Plaintiffs' Counsel had at that time spent a total of 700.85 hours.

36.     The tasks Plaintiffs' Counsel performed in those 700.85 hours included: conducting research regarding North Carolina law; drafting several complaints; drafting a motion for preliminary injunction; taking the depositions of Tim Wielechowski of Wells Fargo and Anthony Thompson of Krispy Kreme; and preparing the appropriate documents to seek and effectuate Court approval of the Settlement. The Court concludes that these efforts were necessary and appropriate in light of the complex nature of the litigation.  *See* N.C. Rev. R. Prof. Conduct 1.5(a)(1).  However, the Court will exclude unnecessary duplication, inefficiencies, or other efforts not directed to litigation before this Court.

37.     The Court concludes that the total reasonable time spent on the litigation is significantly less than the total time sought to be compensated in the Motion.   Examples of entries in the underlying time records supporting this conclusion include:

- At least six firms recorded at least 84.3 hours regarding a single motion for a preliminary injunction.  (*See* Jan. Supp'l Br. Exs. 1A, 2A, 3A, 6A, 7A, 8A);

- At least ten firms recorded at least 94.35 hours drafting or reviewing complaints, (*see* Jan. Supp'l Br. Exs. 1A, 2A, 3A, 4A, 5A, 6A, 7A, 8A, 9A, 10A), including a single ten-hour entry by a partner for reviewing the "proxy, other SEC filings, and other public information to draft [a] *federal* complaint."  (Jan. Supp'l Br. Ex. 7A, at 2 (emphasis added));

- Out-of-state counsel spent in excess of fifteen hours conducting research on North Carolina's basic, easily-identified pleading requirements for shareholder

derivative actions.  (*See* Jan. Supp'l Br. Ex. 2A, at 1 (recording "[r]esearch regarding North Carolina pleading and demand requirements"); Jan. Supp'l Br. Ex. 3A, at 7, 8 (recording research on "NC specific law re merger litigation, class action v derivative, is demand required"); Jan. Supp'l Br. Ex. 4A, at 1 (recording "NC legal research re: derivative v. direct claims").)

- One firm recorded a total of 5.7 hours solely for "attn to coordination."  (Jan. Supp'l Br. Ex. 5A, at 1.)

38.     The Court, in its discretion and based on its comprehensive review of the underlying time entries, its familiarity with the litigation, and its consideration of the labor and skill required to litigate actions of this novelty and complexity, concludes that Plaintiffs' Counsel reasonably spent a total of 500 hours on these related cases.  N.C. Rev. R. Prof. Conduct 1.5(a)(1).  The Court does not believe that any exigencies of having to litigate in the compressed time frame between announcing the Merger and seeking shareholder approval require that the Court disregard the inefficiencies and duplication of effort reflected in the time records.

39.     The Court now examines these 500 hours pursuant to the factors contained in RPC 1.5(a) to determine an appropriate fee award.  The Court finds that neither RPC 1.5(a)(2), 1.5(a)(5), nor 1.5(a)(6) weigh heavily in favor for or against any fee award.  Particularly considering the number of counsel available to dedicate efforts to the litigation, the record does not support any conclusion that "the nature of this engagement precluded Plaintiffs' counsel from taking on other work during the brief period of this engagement."  *Newbridge*, 2016 NCBC LEXIS 91, at *41.

40. The Court next considers a reasonable hourly rate used to calculate a lodestar, against which a fee award should be compared. N.C. Rev. R. Prof. Conduct 1.5(a)(3). Plaintiffs' Counsel assert that their fee request reflecting an implied rate of $471.52 per hour represents a "dramatic discount" from their normal rates. (Pls.' Mem. L. Supp. Mot. Approval Attorneys' Fees Expenses 8, 10–11 ($350,000 award less $19,531.76 in expenses divided by 700.85 hours).) Obviously, the implied rate increases significantly when calculated using only 500 hours.

41. The nature of this litigation required skilled counsel experienced in shareholder class actions. *See* N.C. Rev. R. Prof. Conduct 1.5(a)(1) and 1.5(a)(7). While Plaintiffs' Counsel are certainly well-regarded, highly experienced counsel who have been involved in class actions that have generated significant results for shareholders in other litigation, the Court concludes that the litigation could have been competently handled by North Carolina counsel whose billing rates are significantly below the rates that Plaintiffs' Counsel contend prevail in their home jurisdictions. Judge Bledsoe has concluded in similar litigation "that a typical and customary hourly rate charged in North Carolina for complex commercial litigation . . . ranges from $250 to $475." *Newbridge*, 2016 NCBC LEXIS 91, at *46–47. This Court, as a result of experience and its consideration of the records in other lawsuits before it, has previously recognized a range of $250 to $550 per hour. *Pike*, 2015 NCBC LEXIS 95, at *22–23; *see also In re Harris Teeter Merger Litig.*, No. 13 CVS 12579, 2014 NCBC LEXIS 47, at *24 (N.C. Super. Ct. Sept. 24, 2014) (examining John Hughes' affidavit indicating that standard North Carolina hourly rates for

similar litigation are between $250 and $450).  In addition to its experience in similar litigation in North Carolina, this Court has regularly reviewed attorney fee petitions in similar litigation with similar settlements in other jurisdictions, including the Delaware Court of Chancery.  The Court further notes that Objector's opposition to the award of any attorneys' fees was not primarily based on the reasonableness of underlying billing rates, and no party has opposed or challenged the reasonableness of the rates reflected in the billings submitted in support of the Motion.

42.    Plaintiffs' Counsel suggest that their implied rate of $471.52 per hour is reasonable in part because, under RPC 1.5(a)(8), the matter was "purely contingent." (Pls.' Mem. L. Supp. Mot. Approval Attorneys' Fees Expenses 12.)  The Court, in its discretion, determines that awarding a premium based on RPC 1.5(a)(8) is not appropriate in this particular litigation.

43.    The Court also must assess the reasonableness of the requested fees in light of the amount involved and the results obtained.  N.C. Rev. R. Prof. Conduct 1.5(a)(4).  The supplemental disclosures included: "(1) the unlevered cash flows used in the financial advisor's discounted cash flow ("DCF") analysis; (2) Krispy Kreme's management's considerations regarding their potential post-merger employment; (3) the financial advisor's potential conflict of interest; and (4) metrics used to evaluate comparable companies." *Krispy Kreme*, 2018 NCBC LEXIS 1, at *22.

44.    When approving the Settlement, the Court concluded that the disclosures were "not plainly immaterial and the release [wa]s reasonable." *Id.* at *21.  In that context, the Court concluded that "materiality" means "a substantial

likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* at *22 (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449). Pursuant to that standard, the Court found that the supplemental disclosures were not plainly immaterial and were "sufficiently material to serve as consideration for the Settlement," and was influenced by the fact that the release was very narrowly tailored and effectively no more preclusive than the shareholder vote approving the Merger. *Krispy Kreme*, 2018 NCBC LEXIS 1, at *25. Stated differently, the Court did not find that the materiality of the supplemental disclosures was plain or obvious.

46. The relevant inquiry now is whether the supplemental disclosures, even if sufficiently material to constitute consideration for the Settlement, are of such obvious value to justify a fee resulting in an implied rate at the high end of the range for legal services for class actions in North Carolina. The Court, in its discretion, concludes that that they are not.

46. A settlement with a class-wide release based solely on supplemental disclosures could arguably support a presumption that the implied hourly rate should fall within the lower end of the range. *See Newbridge*, 2016 NCBC LEXIS 91, at *58. On the other hand, there may be occasions where the value of supplemental disclosures has a more immediate and apparent positive effect on a shareholder's casting an informed vote on a proposed transaction. But here, the record does not support a finding that the disclosures were obviously material. *See Krispy Kreme*, 2018 NCBC LEXIS 1, at *27 (noting that Plaintiffs' Counsel presented a "reasoned

argument that some shareholders *might* have found the [s]upplemental [d]isclosures to be material" and that most of the disclosures were material only "to a *lesser extent*" (emphases added)). Objector represented that the supplemental disclosures provided no benefit and did not influence the shareholder vote at all. (Objections and Notification to Appear at Settlement Hearing 1–2, 12, ECF No. 51). While the Court disagrees with Objector's argument that the supplemental disclosures had no value at all, it also disagrees with Plaintiffs' Counsel's argument that the value of the disclosures was so obvious as to justify a fee award based on a premium rate.

47.     Accordingly, after considering each of the RPC 1.5(a) factors, the Court, in its discretion, concludes that a fee award of $150,000.00 is appropriate, yielding an implied rate of $300 per hour. The Court finds, based on its experience, its prior conclusions, and the conclusions of many other North Carolina courts, that $300 per hour is well within the standard range for similar legal services in North Carolina.

48.     The Motion also seeks expenses. The Court has examined supporting materials and concludes that Plaintiffs' Counsel reasonably incurred $19,531.76 in expenses.

49.     The Court now considers the effect, if any, of the Fee Agreements' RPC violations on Plaintiffs' Counsel's ability to recover attorneys' fees and expenses.

**C.     <u>The Fee Agreements' Failure to State a Percentage of Recovery to Accrue to Plaintiffs' Counsel in the Event of a Monetary Recovery does not Preclude an Award of Attorneys' Fees Based on the Separate Fee-Shifting Agreement with Defendants.</u>**

50.     The Fee Agreements are contingent fee agreements and subject to RPC 1.5(c), which states that

[a] contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, *including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal*; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party.

N.C. Rev. R. Prof. Conduct 1.5(c) (emphasis added).

51.     With two exceptions,[1] the fee agreements—including those of Co-Lead Counsel—do not state any percentage of the total award that might accrue to the attorney in the event of a monetary recovery. Plaintiffs' Counsel contend that such omissions are irrelevant where the fee award now requested is not based on a monetary recovery and, in any event, requires Court approval.  (Pls.' Supp'l Sub. Supp. Mot. Approval Attorneys' Fees Expenses 2, ECF No. 66.)

52.     The Court is not aware of any North Carolina precedent or a formal ethics opinion that specifically addresses whether Rule 1.5(c) should be read as not requiring the lawyer to state a percentage when any fee the lawyer receives must be approved by the Court and is ultimately paid by a party other than the client.  Other contingent fee agreements may require court approval but may be taken as a percentage of a monetary recovery, such as, for example, settlements including minor plaintiffs.  *See Ballard v. Hunter*, 12 N.C. App. 613, 619, 184 S.E.2d 423, 427 (1971). Plaintiffs' Counsel assert that different factors are at play when attorneys' fees are

---

[1] Brodsky and Smith's fee agreement states that "[h]istorically, courts have awarded between 25% to 35% of the total amount recovered for the class as appropriate legal fees."  (Jan. Supp'l Br. Ex. 3B, at 1.)  Another fee agreement states that "[i]n no event, will we request over 33.33% of the amount received plus reasonable disbursements." (Jan. Supp'l Br. Ex. 4B, at 1.)

to be paid by defendants. On the particular facts of this settlement, the Court concludes that even if the Fee Agreements technically violate Rule 1.5(c), that violation should not bar a fee award to Plaintiffs' Counsel when it is to be paid by the Defendants pursuant to the Stipulation and approved by the Court.

53.     In other contexts, North Carolina appellate courts have held that an underlying RPC 1.5(c) violation does not necessarily bar any and all recovery of attorneys' fees and expenses if there is a valid basis for recovery beyond the contract between the attorney and client, such as *quantum meruit.* For example, in *Robertson v. Steris Corp.*, 234 N.C. App. 525, 537, 760 S.E.2d 313, 321 (2014), the North Carolina Court of Appeals upheld a *quantum meruit* recovery of attorneys' fees where the attorney's failure to put a contingent fee agreement in writing violated Rule 1.5(c), noting a distinction between "violations of public policy regarding the content of contracts rather than their form." *Id.* at 535, 760 S.E.2d at 320 (emphasis removed). *Cf. Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 619, 730 S.E.2d 763, 766 (2012) (holding that a technical violation of the rules governing fee-splitting agreements did not preclude *quantum meruit* recovery).

54.     However, attorneys may not be able to recover fees *under any theory* when the fee agreement violates a strong public policy underlying an RPC provision. For example, in *Law Offices of Peter H. Priest, PLLC v. Coch*, 244 N.C. App. 53, 71, 780 S.E.2d 163, 174 (2015), the Court of Appeals held that an attorney was not allowed to recover fees either under a fee agreement or *quantum meruit* where the attorney had clearly violated RPC 1.8(a) by entering a business transaction with a

client without advising the client in writing of the desirability to get independent legal counsel and by failing to obtain informed consent from all necessary parties. *See also id.* at 67, 780 S.E.2d at 172 (noting the "strong public policy rationale for allowing violations of Rule 1.8 to be used defensively").

55.     Here, the Fee Agreements may violate RPC 1.5(c)'s requirement to state a percentage of a contingency fee that will accrue to an attorney in the event of a monetary recovery.  However, the Court concludes that any such violations concern the form, not content, of RPC 1.5(c) and do not preclude a fee award based on the holding in *Robertson*, 234 N.C. App. at 537, 760 S.E.2d at 321.  However, as discussed below, the Court concludes that any expense recovery must be barred.

**D.     The Fee Agreements' Provisions Absolving Plaintiffs of All Financial Responsibility at the Outset of Litigation Bar Any Expense Recovery.**

56.     Rule 1.8(e) governs financial arrangements lawyers may make with their clients to advance the costs of litigation, and states that

> [a] lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
>
> > (1) a lawyer may *advance* court costs and expenses of litigation, *the repayment of which may be contingent on the outcome of the matter*; and
> >
> > (2) a lawyer representing an indigent client may *pay* court costs and expenses of litigation on behalf of the client.

N.C. Rev. R. Prof. Conduct 1.8(e) (emphases added).  Comment 10 to Rule 1.8 states:

> *Lawyers may not subsidize lawsuits* or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial

stake in the litigation. These dangers do not warrant a prohibition on a lawyer *lending* a client court costs and litigation expenses, including the expenses of medical examination and the costs of obtaining and presenting evidence, because these advances are virtually indistinguishable from contingent fees and help ensure access to the courts.

N.C. Rev. R. Prof. Conduct, N.C. State Bar 1.8 cmt.10 (emphases added).

57. Historically, professional rules have recognized that a client should bear ultimate responsibility for the cost of litigation, allowing advancement of expenses, "provided the client remains ultimately liable for such expenses.*" See In re Se. Hotel Properties Ltd. P'ship Inv'r Litig.*, 151 F.R.D. 597, 608 (W.D.N.C. 1993) (quoting the prior version of RPC 1.8(e) and holding that because the client remained ultimately responsible for the expenses of litigation, the financial arrangement between class counsel and the client was acceptable). Such rules left to the attorney's discretion whether to enforce that obligation, particularly where a case pursued on a contingency basis yielded no recovery from which the costs advanced by the attorney might be repaid. *Id.* at 608 n.6 (recognizing "that the reality of class litigation is that lawyers rarely seek to recover costs" from their clients).

58. Although the "ultimately liable" language is not found in the current RPC 1.8(e), the texts of both Rule 1.8(e) and Comment 10 make clear that "[c]osts advanced for a client are the client's financial responsibility." *Crumley & Assocs., P.C.*, 219 N.C. App. at 620, 730 S.E.2d at 767. There is a crucial distinction between *lending* or *advancing* court costs at the outset of litigation, with the potential that the client will not be required to repay if there is no recovery, and absolving a client of all financial risk at the outset of litigation by agreeing that the client will never be

required to *pay* such costs. *See* N.C. Rev. R. Prof. Conduct 1.8(e) (distinguishing between "advancing" court costs for non-indigent clients and "paying" court costs for indigent clients); N.C. Rev. R. Prof. Conduct 1.8, cmt.10 (prohibiting subsidization of lawsuits while allowing attorneys to *lend* court costs). That attorneys may ultimately waive the costs they advanced does not allow them to absolve clients of all financial responsibility *ab initio*.

59. Thus, although RPC 1.8(e) allows an attorney to waive a client's responsibility when litigation achieves no monetary award, it does not contemplate that clients can be absolved from any and all financial responsibility at the inception of the litigation and without regard to the litigation's outcome. To the contrary, RPC 1.8(e) "enable[s] a client to share the risk of losing with a lawyer," thereby supporting one of the main functions of contingent fee arrangements. Restatement (Third) of Law Governing Lawyers § 35, cmt.b (Am. L. Inst. 2000).

60. Rigrodsky & Long's fee agreement flatly states that "[t]he Firm agrees to *pay* all costs and expenses that they deem necessary to prosecute this case." (Jan. Supp'l Br. 2B, at 2 (emphasis added).) Levi & Korsinsky's Fee Agreement states that the firm will "advance all expenses in the litigation," and then clarifies "that you are not liable to pay any of the expenses of the lawsuit, whether attorneys' fees or costs." (Jan. Supp'l Br. Ex. 1B, at 2.) It assures the client that, "[r]*egardless of the result, we will never ask you to directly pay for any attorneys' fees or costs*." (Jan. Supp'l Br. Ex. 1B, at 2 (emphasis added).)

61. These Fee Agreements guarantee, at the outset of litigation, that the client would *never* bear *any* portion of any of the costs associated with the litigation. There was no possible contingency that would require Plaintiffs to pay any portion of any advanced costs. The "risk of losing" Plaintiffs shared with Plaintiffs' Counsel was zero. Restatement (Third) of Law Governing Lawyers § 35, cmt.b (Am. L. Inst. 2000).

62. Plaintiffs' Counsel seek to rely on federal authority suggesting that, considering the expansive nature of class litigation, class-action plaintiffs should be uniquely treated for purposes of class-action costs. (Pls.' Supp'l Sub. Supp. Mot. Approval Attorneys' Fees Expenses 7 (citing *Rand v. Monsanto Co.*, 926 F.2d 596, 601 (7th Cir. 1991), *overruled on other grounds by Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015).) But that authority speaks to whether a class representative should bear a disproportionate cost when seeking to represent a class beyond his individual claim, not whether the class representative should be held harmless from costs altogether at the inception of the litigation. *Rand*, 926 F.2d at 601 ("[A] district court may not establish a *per se* rule that the representative plaintiff must be willing to bear all (as opposed to a pro rata share) of the costs of the action.").

63. In short, the Fee Agreements allowed counsel to subsidize the litigation, which RPC 1.8(e) prohibits. N.C. Rev. R. Prof. Conduct 1.8(e), cmt.10. To subsidize means to "aid or promote (an undertaking) through financial support." Black's Law Dictionary 1656 (10th ed. 2014). The Fee Agreements' guarantee to *pay* expenses at the outset of litigation is contrary to the language and spirit of RPC 1.8(e) and is reminiscent of, though certainly not identical to, the proscribed common law offense

of champerty, "a bargain by a stranger with a party to a lawsuit to bear the costs in exchange for a stake in the outcome." *Weaver, Bennett & Bland, P.A. v. Speedy Bucks, Inc.*, 162 F. Supp. 2d 448, 454 (W.D.N.C. 2001) (citing *Charlotte–Mecklenburg Hosp. Auth. v. First of Georgia Ins. Co.,* 340 N.C. 88, 91, 455 S.E.2d 655, 657 (1995)). Accordingly, the Fee Agreements violate RPC 1.8(e)'s requirement that the repayment of advanced litigation costs be contingent upon the outcome of a matter.

64.     In considering how to enforce the violation of RPC 1.8(e), the Court is guided by the Restatement (Third) of Law Governing Lawyers. *See, e.g.*, *Worley v. Moore*, 370 N.C. 358, 807 S.E.2d 133, 139 (2017) (examining the Restatement (Third) of The Law Governing Lawyers when interpreting and applying RPC 1.9(a)). Section 37 of the Restatement (Third) of Law Governing Lawyers ("Section 37") discusses the partial or complete forfeiture of a lawyer's compensation when a lawyer violates a duty to a client, stating that

> [a] lawyer engaging in a clear and serious violation of a duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter.  Considerations relevant to the question of forfeiture include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies.

Restatement (Third) of Law Governing Lawyers § 37 (Am. L. Inst. 2000).

65.     The source of duty may come from "an applicable lawyer code." *Id.* § 37 cmt.c.  A forfeiture is appropriate only where "a reasonable lawyer, knowing the relevant facts and law reasonably accessible to the lawyer, would have known that the conduct was wrongful." *Id.* § 37 cmt.d.  Forfeiture is generally limited to serious infractions, as "[m]inor violations do not justify leaving the lawyer entirely unpaid

for valuable services rendered to a client, *although some such violations will reduce the size of the fee.*" *Id.* (emphasis added). "Ultimately the question is one of fairness in view of the seriousness of the lawyer's violation and considering the special duties imposed on lawyers, the gravity, timing and likely consequences to the client of the lawyer's misbehavior, and the connection between the various services performed by the lawyer." *Id.* § 37 cmt.e.

66. Applying these principles, the Court, in its discretion, concludes that the violation of RPC 1.8(e) offends the public policy on which the rule is based and should bar Plaintiffs' Counsel from recovering any of the expenses of the litigation, even if those expenses would be paid by Defendants. That bar is necessary to enforce the public policy underlying RPC 1.8(e).

**E.      The Court Need not Address Plaintiffs' Alternative Request for an Award Based on *Quantum Meruit.***

67. Plaintiffs' Counsel assert that, beyond the Stipulation, the Court may alternatively award fees and expenses pursuant to *quantum meruit* via N.C. Gen. Stat. § 55-7-46. (Pls.' Mem. L. Supp. Mot. Approval Attorneys' Fees Expenses 6.) Because the Court finds the Stipulation to be a valid contract and accepts it as the basis for the award, it need not determine whether, if the Stipulation was invalid, recovery based on *quantum meruit* would be appropriate. *Robinson, Bradshaw & Hinson, P.A. v. Smith,* 129 N.C. App. 305, 315, 498 S.E.2d 841, 849 (1998) (citing *Catoe v. Helms Construction & Concrete Co.,* 91 N.C. App. 492, 497, 372 S.E.2d 331, 335 (1988)) ("There can be no recovery for breach of an implied contract when an express contract covers the same subject matter.").

## IV. CONCLUSION

68.    For the foregoing reasons, the Court GRANTS in part and DENIES in part the Motion.  Defendants shall pay Plaintiffs' Counsel a total of $150,000.00 as attorneys' fees.  Plaintiffs' Counsel shall not recover their expenses in the litigation.

SO ORDERED, this the 20th day of June, 2018.


/s/ James L. Gale
James L. Gale
Chief Business Court Judge