Rossabi Law PLLC v. Greater Greensboro Ent. Grp., LLC, 2021 NCBC 31.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

ROSSABI LAW PLLC f/k/a ROSSABI
REARDON KLEIN SPIVEY PLLC,

        Plaintiff,

v.

GREATER GREENSBORO
ENTERTAINMENT GROUP, LLC
and N CLUB, LLC,

        Defendants,

and

GREATER GREENSBORO
ENTERTAINMENT GROUP, LLC,

        Third-Party Plaintiff,

v.

AMIEL ROSSABI,

        Third-Party Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 9568

ORDER AND OPINION ON
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

1.    **THIS MATTER** is before the Court on the 21 August 2020 filing of Defendants' Motion for Summary Judgment (the "Motion") pursuant to Rule 56 of the North Carolina Rules of Civil Procedure (the "Rule(s)").  (ECF No. 56.)

2.    For the reasons set forth herein, the Court **DENIES** the Motion.

*Rossabi Law PLLC, by Gavin J. Reardon and Amiel J. Rossabi, for Plaintiff Rossabi Law PLLC f/k/a Rossabi Reardon Klein Spivey PLLC and Third-Party Defendant Amiel Rossabi.*

*Boydoh & Hale, PLLC, by J. Scott Hale, for Defendant and Third-Party Plaintiff Greater Greensboro Entertainment Group, LLC and Defendant N Club, LLC.*

Robinson, Judge.

## I. INTRODUCTION

3. This dispute arises out of legal services provided by Plaintiff and Third-Party Defendant to Defendants and the parties' disagreement regarding the payment of Plaintiff's legal fees.

## II. FACTUAL BACKGROUND

4. The Court does not make findings of fact when ruling on motions for summary judgment. "But to provide context for its ruling, the Court may state either those facts that it believes are not in material dispute or those facts on which a material dispute forecloses summary adjudication." *Ehmann v. Medflow, Inc.*, 2017 NCBC LEXIS 88, at *6 (N.C. Super. Ct. Sept. 26, 2017).

5. Third-Party Defendant Amiel Rossabi ("Rossabi") is the managing partner of Plaintiff Rossabi Law PLLC ("Plaintiff").[1] (Aff. Amiel J. Rossabi ¶ 2, ECF No. 63 ["Rossabi Aff."].)

6. Defendant N Club, LLC ("N Club") owns property located on South Elm Street in Greensboro, North Carolina, which N Club leases to Defendant Greater Greensboro Entertainment Group ("GGEG" and with N Club collectively referred to as "Defendants"). (Aff. Rocco Scarfone ¶ 7, ECF No. 58[2] ["Scarfone Aff."].) GGEG

---

[1] On 18 November 2020, Plaintiff filed the Motion to Amend Caption requesting that the Court change the caption of this litigation to reflect Plaintiff's change in name. (ECF No. 67.) Plaintiff, formerly known as Rossabi Reardon Klein Spivey PLLC, changed its name with the North Carolina Secretary of State and the North Carolina State Bar on 21 August 2020 to Rossabi Law PLLC. On 23 November 2020, the Court entered the Order on Motion to Amend Caption granting the Motion to Amend Caption to reflect Plaintiff's name change. (ECF No. 69.)

[2] In filing Defendants' Brief in Support of Defendants' Motion for Summary Judgment, counsel for Defendants filed their brief in support of the Motion and all the exhibits submitted in support of the Motion as one .pdf document. (*See* ECF No. 58.)

operates a music venue at the leased property, which is known as the Cone Denim Entertainment Center ("CDEC"). (Scarfone Aff. ¶ 7.)

7.    Rocco Scarfone ("Scarfone") is a member and manager of Defendants. (Scarfone Aff. ¶ 2.) Scarfone is also the President of GGEG. (Scarfone Aff. ¶ 3.)

8.    At all times relevant to this litigation, Rossabi was a member of GGEG. (Scarfone Aff. ¶ 6.)

9.    Jeffrey Furr ("Furr") is a member of Defendants. (Aff. Jeffrey Furr ¶ 2, ECF No. 58 ["Furr Aff."].) Furr is also the Vice President of GGEG. (Furr Aff. ¶ 3.)

10.    Pursuant to Section 3.3 of GGEG's Operating Agreement,

> The Vice-President of [GGEG] shall be notified of all legal matters including but not limited to leases, contracts, agreements, fees, and major expenditures of [GGEG] prior to their being incurred. "Major Expenditure" is defined as any expenditure exceeding Ten Thousand Dollars ($10,000.00)[.]  Prior to entering any of the above or a Major Expenditure, the Vice-President and President shall discuss and mutually agree. Upon the event they do not agree then an agreement will be reached by a Majority in Interest of the Members.

(Scarfone Aff. Ex. 2 § 3.3 ["Operating Agreement"].)  Scarfone owns the Majority in Interest of the Members as defined by GGEG's Operating Agreement. (Rossabi Aff. ¶ 69.)

11.    Rossabi has represented Defendants and Scarfone as their legal counsel for more than ten years. (Rossabi Aff. ¶ 5.) Rossabi contends that he and Plaintiff have implemented various billing arrangements throughout their representation of Defendants and Scarfone, including hourly rates, bartering, a contingency fee basis, and providing services at no cost. (Rossabi Aff. ¶ 5.) Scarfone contends that Rossabi

and Plaintiff have represented GGEG pursuant to an hourly rate fee agreement since 2014. (Scarfone Aff. ¶ 8.)

12. During July 2017, Scarfone received a letter from the City of Greensboro (the "City") indicating that the City purchased property behind the CDEC and the City intended to condemn N Club's access easement and terminate GGEG's shared parking agreement for the leased property. (Scarfone Aff. ¶ 10; *see also* Compl. ¶ 20, ECF No. 3.)

13. Scarfone engaged Plaintiff to represent Defendants to prevent the City from proceeding with its plan to condemn N Club's access easement and terminate GGEG's shared parking agreement. (Rossabi Aff. ¶ 9; Scarfone Aff. ¶ 11.) At the initial stages of the dispute between Defendants and the City, Plaintiff represented Defendants on an hourly basis. (Furr Aff. ¶ 8; Rossabi Aff. ¶ 15; Scarfone Aff. ¶ 12.)

14. On 24 October 2017, the City and N Club entered into the Professional Services Review Agreement (the "PSA"). (Rossabi Aff. Ex. D; ECF No. 63.4 ["PSA"].) Pursuant to the terms of the PSA, the City was to pay or reimburse N Club for preliminary inspections, review, and analysis of the City's condemnation plan up to forty-five thousand dollars ($45,000), which included reimbursement of legal fees incurred by Defendants. (PSA ¶ 4; *see also* Rossabi Aff. ¶ 26.)

15. Plaintiff contends that the PSA was intended to be a limited agreement. (Rossabi Aff. ¶ 29.) Scarfone contends that the PSA covered all of Plaintiff's legal fees through 19 December 2017. (Scarfone Aff. ¶ 17.)

16. On 19 December 2017, against Defendants' wishes, the Greensboro City Council approved the City's condemnation of N Club's access easement and the termination of the shared parking agreement. (Rossabi Aff. ¶¶ 10, 34.) At the 19 December 2017 City Council meeting, the City publicly adopted a resolution authorizing the payment of Defendants' legal fees. (Scarfone Aff. ¶ 20.)

17. Plaintiff's initial engagement with Defendants, as it pertains to the CDEC, was limited to Plaintiff's work related to stopping the City from approving condemnation of N Club's access easement. (Rossabi Aff. ¶ 36.) Accordingly, it is Plaintiff's position that Plaintiff's initial representation of Defendants and the hourly rate agreement terminated on 19 December 2017 when the City approved the condemnation plan. (Rossabi Aff. ¶ 36.)

18. Approval of the condemnation meant that Defendants, at the advice of Plaintiff, would need to file a lawsuit against the City to seek protection against the loss of the easement and shared parking agreement (the "Cone Denim Action"). (Rossabi Aff. ¶ 36; *see also* Compl. ¶ 36.) Between 20 December 2017 and 19 January 2018, Plaintiff drafted a complaint and motion for temporary restraining order and preliminary injunction, which were ultimately filed. (Rossabi Aff. ¶¶ 42, 47.)

19. Defendants believed that at all times after 19 December 2017, the City was obligated to pay Defendants' legal fees incurred in the Cone Denim Action. (Scarfone Aff. ¶¶ 21, 24.) Rossabi contends that Scarfone represented to Rossabi that Defendants could not pay an hourly rate for Plaintiff's legal services in the Cone Denim Action; therefore, Scarfone asked if Plaintiff could represent Defendants on a

contingency fee basis going forward, and Rossabi agreed on Plaintiff's behalf. (Rossabi Aff. ¶¶ 37, 39–40.)

20. Beginning on 20 December 2017, Rossabi contends that Plaintiff represented Defendants on a one-third (1/3) contingency fee basis. (Rossabi Aff. ¶ 41.) Rossabi did not immediately draft an agreement but waited until 25 January 2018 to draft the contingency fee agreement (the "Contingency Agreement"). (Rossabi Aff. ¶¶ 41, 48.)

21. The Contingency Agreement provides in part that Plaintiff

> will represent [Defendants] with respect to the [Cone Denim Action], with the understanding that [Plaintiff] will receive a contingent fee equal to $33^1/_3$% of the amount of recovery. The recovery shall mean any compensation GGEG and/or N Club receive, whether through settlement or otherwise related to the [Cone Denim Action]. If some or all of the compensation is not monetary, the value of such compensation shall be calculated to determine the full amount of recovery.

(Rossabi Aff. Ex. J, ECF No. 63.10.)

22. On 26 January 2018, Rossabi hand delivered the Contingency Agreement to Scarfone at Plaintiff's office. (Rossabi Aff. ¶ 51.) Scarfone represented to Rossabi that Scarfone intended to sign the Contingency Agreement on behalf of Defendants. (Rossabi Aff. ¶ 51.)

23. On 27 January 2018 or 28 January 2018, Scarfone represented to Rossabi that Scarfone signed the Contingency Agreement and he would deliver the signed Contingency Agreement to Rossabi. (Rossabi Aff. ¶ 53.)

24. Plaintiff, on behalf of Defendants, initiated settlement discussions with the City. (*See* Rossabi Aff. ¶¶ 56–60.) At a 28 March 2018 mediation with the City,

Scarfone acknowledged the existence of the Contingency Agreement. (Rossabi Aff. ¶ 60; *see also* Scarfone Aff. ¶ 26.)

25. Rossabi believed that the settlement agreement should include "a provision to get the City to pay some of Defendants' attorney's fees." (Rossabi Aff. ¶ 57.) It was Rossabi's belief that "there was simply no way the City would agree to pay *all* of Defendants' legal fees[.]" (Rossabi Aff. ¶ 58 (emphasis in original).) Rossabi also believed that disclosing the existence of the Contingency Agreement to the City would have a negative impact on settlement negotiations; therefore, Rossabi and Scarfone agreed to not inform the City that the parties entered into the Contingency Agreement. (Rossabi Aff. ¶¶ 58, 60.)

26. Defendants and the City reached a settlement worth approximately one million dollars in the Cone Denim Action. (Rossabi Aff. ¶ 63.)

27. On 24 April 2018, Defendants and the City entered into a finalized settlement agreement (the "Settlement Agreement"). (Scarfone Aff. Ex. 8 ["Settlement Agreement"].) Paragraph 19 of the Settlement Agreement provides that:

> The City agrees to pay attorney's fees of N Club and GGEG in the total amount of $85,000 (not including payments already made by the City pursuant to the [PSA], dated October 24, 2017), payable to Rossabi Law Partners within seven (7) business days of the full execution of this [Settlement] Agreement, which execution shall take place by April 24, 2018. As to all other costs and attorney's fees, the parties will bear their own costs and attorney's fees.

(Settlement Agreement ¶ 19.)

28. Plaintiff received $85,000 pursuant to the terms of the Settlement Agreement. (Rossabi Aff. ¶ 64.) Plaintiff contends that it is entitled to $333,000 pursuant to the terms of the Contingency Agreement. (Rossabi Aff. ¶ 63.)

29. On the other hand, Defendants believe and contend that Plaintiff would be paid in full for all of its legal work in the Cone Denim Action with Plaintiff receiving $85,000 of the settlement proceeds, specifically identified by the Settlement Agreement as payment for Defendants' attorneys' fees. (Scarfone Aff. ¶¶ 28–34.) Scarfone represents that the City made two payments totaling $118,655 to Plaintiff, on Defendants' behalf, as payment of Plaintiff's legal fees. (Scarfone Aff. ¶ 35.) It is Defendants' position that the total payments by the City of $118,655 represent payment in full to Plaintiff for the hours Plaintiff worked on and billed for the Cone Denim Action. (Scarfone Aff. ¶ 35.)

30. After Defendants and the City entered into the Settlement Agreement, Scarfone informed Rossabi that Furr would not agree to pay Plaintiff pursuant to the terms of the Contingency Agreement. (Rossabi Aff. ¶ 61.)

31. On 26 April 2018, Rossabi emailed Scarfone and indicated that Rossabi had given Scarfone and Furr the Contingency Agreement; however, Rossabi had not yet received it back signed by Scarfone. (Scarfone Aff. Ex. 10.)

32. Defendants contend that neither Scarfone nor Furr approved the Contingency Agreement with Plaintiff. (Scarfone Aff. ¶ 36.) Scarfone contends that execution of the Contingency Agreement would require the approval of both Scarfone and Furr and that Scarfone alone could not have agreed to the Contingency

Agreement pursuant to the terms of GGEG's Operating Agreement. (Scarfone Aff. ¶ 36.)

33. Scarfone represents that he never signed the Contingency Agreement. (Scarfone Aff. ¶ 45.) Furr also represents that he never signed the Contingency Agreement. (Furr Aff. ¶ 30.)

### III. PROCEDURAL BACKGROUND

34. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

35. Plaintiff initiated this action with the filing of its Complaint on 5 December 2018.

36. On 8 March 2019, before this case was designated as a mandatory complex business case and assigned to the undersigned, Defendants filed Defendants' Motion to Dismiss and Motion to Strike pursuant to Rule 12 (the "Motion to Dismiss"). (ECF No. 6.) On 27 June 2019, Superior Court Judge David L. Hall ("Judge Hall") entered an order denying the Motion to Dismiss. (ECF No. 7.)

37. Defendants filed Defendants' Answer to Complaint and Greater Greensboro Entertainment Group, LLC's Third-Party Complaint on 29 July 2019. (ECF No. 4.) The Third-Party Complaint caused Rossabi to be joined as a third-party defendant.

38. On 30 July 2019, this matter was designated as a mandatory complex business case, (ECF No. 1), and assigned to the undersigned, (ECF No. 2).

39. On 21 November 2019, Defendants filed Defendants' Motion for Judgment Upon the Pleadings pursuant to Rule 12(c). (ECF No. 32.) On 8 May 2020, the Court

entered the Order and Opinion on Defendants' Motion for Judgment Upon the Pleadings denying the Rule 12(c) motion. (ECF No. 53.)

40. On 21 August 2020, Defendants filed their Motion and Brief in Support of Defendants' Motion for Summary Judgment. (Br. Supp. Defs.' Mot. Summ. J., ECF No. 58 ["Br. Supp."].) Plaintiff filed Plaintiff's Brief in Opposition to Defendants' Improper Motion for Summary Judgment on 23 October 2020. (Pl.'s Br. Opp. Defs.' Improper Mot. Summ. J., ECF No. 64 ["Resp. Br."].)

41. The Court held a hearing on the Motion on 9 December 2020. (*See* ECF No. 66.) The Motion is ripe for resolution.

## IV. LEGAL STANDARD

42. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83 (2000).

43. The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563 (2008). The movant may make the required showing by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, or by showing through discovery that the opposing party cannot

produce evidence to support an essential element of her claim." *Dobson*, 352 N.C. at 83 (citations omitted).

44. "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85 (2000). The Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83. However, the nonmovant "may not rest upon the mere allegations or denials of its pleading, but its response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If [the nonmovant] does not so respond, summary judgment, if appropriate, shall be entered against [the nonmovant]." N.C.G.S. § 1A-1, Rule 56(e).

## V. ANALYSIS

45. As an initial matter, the Court addresses Plaintiff's argument that the Court may not rule on the merits of the Motion as a reconsideration of Judge Hall's order on the Motion to Dismiss. Concluding that the Court may rule on the merits of the Motion for the reasons stated herein, the Court will address Plaintiff's claims for breach of contract and *quantum meruit* in turn.

## A. The Order on the Rule 12 Motion to Dismiss Does Not Foreclose the Rule 56 Motion

46. Plaintiff argues that the Motion is improper because this Court is unable to reconsider issues determined by Judge Hall's ruling on the Motion to Dismiss. (Resp. Br. 1–3.) Plaintiff contends that "Defendants have now–*once again*—sought judgment on the exact same legal issues that have already been decided in this case." (Resp. Br. 3. (emphasis in original).)

47. "It is well established that, ordinarily, 'no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action.'" *Fox v. Johnson*, 243 N.C. App. 274, 282 (2015) (quoting *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501 (1972)). "The only exception occurs when three conditions are met: (1) the subsequent order was rendered at a different stage of the proceeding, (2) the materials considered by the second judge were not the same, and (3) the first motion did not present the same question as that raised by the later motion." *Fox*, 243 N.C. App. at 282 (cleaned up).

48. Plaintiff's argument fails for three reasons. First, the Motion occurs after the completion of discovery, which is at a different stage of proceeding than the Motion to Dismiss, which was filed at the beginning of this litigation. *See Wake Cty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 650–51 (2014). Next, the Court now considers different materials, including affidavits, email communications, and other

documents, than those that were before Judge Hall. *See Durand v. Krispy Kreme Doughnuts, Inc.*, 2011 N.C. App. LEXIS 1360, at \*16–18 (2011) (concluding a second trial court judge could rule on a Rule 56 motion after the initial trial court judge ruled on a Rule 12 motion in part because the second judge reviewed evidence not available to the first judge). Lastly, the Motion presents a different question than the questions ruled on in Judge Hall's order on the Motion to Dismiss. *See Adkins v. Stanly Cty. Bd. of Educ.*, 203 N.C. App. 642, 692 (2010) ("The trial court's standards for a Rule 12(b)(6) motion to dismiss and a motion for summary judgment are different and present separate legal questions.").

B.  **The Breach of Contract Claim Survives Summary Judgment**

49.  Plaintiff's breach of contract claim is based on Defendants alleged breach of the Contingency Agreement for Defendants' failure to pay Plaintiff for sums owed pursuant to its terms. (Compl. ¶¶ 69–75.) Plaintiff contends that it is entitled to recover 1/3 of one million dollars, the alleged value of the Settlement Agreement, less the $85,000 already paid by the City to Plaintiff pursuant to the terms of the Settlement Agreement. (Compl. ¶¶ 62–63.) Defendants, on the other hand, contend that Plaintiff may not pursue a claim based on alleged breach of a contingent fee agreement because the North Carolina Rules of Professional Conduct (the "RPC(s)") require there to be a written agreement signed by Defendants and none exists. (Br. Supp. 9–11.)

50.  "An essential element of claim for breach of contract is the existence of a valid contract between two or more parties." *Kerry Bodenhamer Farms, LLC v.*

*Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at \*10 (N.C. Super. Ct. Mar. 27, 2017) (internal quotation marks and citation omitted). RPC 1.5(c) provides that "[a] contingent fee agreement shall be in writing signed by the client[.]" N.C.R. PROF'L CONDUCT r. 1.5(c). Failure to comply with RPC 1.5 may render a contingent fee agreement unenforceable. *Dunn v. Dart*, 2011 NCBC LEXIS 24, at \*26–27 (N.C. Super. Ct. July 14, 2011) (concluding that any agreement between the parties was not enforceable absent compliance with RPC 1.5(e)); *see also Law Offices of Juliano, P.C. v. Jensen*, 2015 U.S. Dist. LEXIS 190905, at \*2–3 (M.D.N.C. 2015) (providing that "it would be highly unlikely for the North Carolina courts to enforce" a contingent fee agreement unrelated to the actual work performed and not in compliance with the RPCs).

51. Defendants contend that it "is undisputed that there is no written contingent fee agreement signed by either Defendant[;]" therefore, Defendants are entitled to summary judgment on Plaintiff's breach of contract claim. (Br. Supp. 10–11.) However, Defendants' position that it is "undisputed" that the Contingency Agreement was not signed is erroneous.

52. Rossabi testified that Scarfone requested that Plaintiff represent Defendants on a contingency fee basis. (Rossabi Aff. ¶ 39.) On 25 January 2018, Rossabi, on behalf of Plaintiff, drafted the Contingency Agreement. (Rossabi Aff. Ex. J; Rossabi Aff. ¶ 49.) Rossabi represents, by way of his sworn affidavit, that Scarfone received the Contingency Agreement and that Scarfone represented to Rossabi on

several occasions that Scarfone signed the Contingency Agreement, thereby agreeing to its terms on behalf of Defendants. (Rossabi Aff. ¶¶ 51, 53, 60.)

53. Defendants contend that Furr, as Vice President of GGEG, was required to agree to the terms of the Contingency Agreement and he did not. (Reply Br. Supp. Defs.' Mot. Summ. J. 4, ECF No. 65 ["Reply"].) The Court interprets Defendants' argument to be that even if Scarfone signed the Contingency Agreement, Defendants would not be bound by its terms. (*See* Reply 4.) Despite Defendants' position to the contrary, Section 3.3 of GGEG's Operating Agreement granted Scarfone the authority, as the owner of a Majority in Interest of the Members, to execute the Contingency Agreement without Furr's approval. (*See* Operating Agreement § 3.3; Rossabi Aff. ¶ 69.)

54. While Scarfone denies signing the Contingency Agreement, he does not dispute the factual contention set forth in Rossabi's affidavit that Scarfone represented to Rossabi that Scarfone signed the Contingency Agreement. (*See* Scarfone Aff. ¶¶ 45–56.)

55. Whether the Contingency Agreement was ultimately signed by Scarfone is a genuine issue of material fact that the Court is unable to resolve without considering the credibility of Rossabi and Scarfone, which is inappropriate at this stage of the proceeding. *See Anders v. Hyundai Motor Am. Corp.*, 104 N.C. App. 61, 67 (1991) ("On summary judgment the court does not weigh the credibility of the evidence."); *see also Vernon, Vernon, Wooten, Brown & Andrews, P.A. v. Miller*, 73 N.C. App. 295, 298–99 (1985) (reversing entry of summary judgment and concluding

that the parties' conflicting affidavits raised issues of credibility sufficient to defeat the plaintiff's summary judgment motion).

56. Defendants contend that "Plaintiff's entire claim for breach of a contingent fee agreement rests upon Rossabi's claim that Scarfone said he signed a contingent fee agreement." (Br. Supp. 10.) The Court does not dispute Defendants' contention. However, Rossabi's sworn statement that Scarfone represented to him on numerous occasions that Scarfone signed the Contingency Agreement, Scarfone's failure to dispute that he represented that he signed the Contingency Agreement, and the submission of the draft Contingency Agreement is sufficient, albeit minimally sufficient, to create a genuine issue of material fact sufficient for the breach of contract claim to survive the Motion. While Plaintiff has not come forward at this stage of the proceeding with a signed copy of the Contingency Agreement, that is not a requirement at summary judgment, and it will ultimately be Plaintiff's burden at trial to establish the execution and validity of the Contingency Agreement.[3]

57. Therefore, the Court DENIES the Motion to the extent it requests that the Court grant Defendants summary judgment on Plaintiff's breach of contract claim.

## C. **The Alternative *Quantum Meruit* Claim Survives Summary Judgment**

58. As an alternative claim of relief to Plaintiff's breach of contract claim, Plaintiff asserts a claim based on *quantum meruit*. (Compl. 11.) In sum, Plaintiff

---

[3] Defendants, without citation to any applicable North Carolina law, contend that "[c]ontingent fee agreements are subject to a statute of frauds." (Br. Supp. 11.) However, the Court does not find any support for Defendants' position and declines to apply the statute of frauds to the Contingency Agreement. *See generally* N.C.G.S. § 22-1 *et seq.*

contends that, even if a valid and enforceable contract did not exist between the parties, Plaintiff is entitled to recover the reasonable value of the services rendered by it to Defendants. (Compl. ¶¶ 78–85.) Defendants contend that the hourly fee agreement between Plaintiff and Defendants, pursuant to which Plaintiff was paid in full, precludes Plaintiff from bringing its *quantum meruit* claim. (Br. Supp. 13–15.)

59. "*Quantum meruit* is a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment." *Paul L. Whitfield, P.A., v. Gilchrist*, 348 N.C. 39, 42 (1998). "To recover in *quantum meruit*, plaintiff must show: (1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." *Envtl. Landscape Design Specialist v. Shields*, 75 N.C. App. 304, 306 (1985).

60. As noted above, it is Defendants' position that an hourly fee agreement governs the payment of Plaintiff's legal fees and the City paid Defendants' legal fees in full. (Br. Supp. 13–15.) The plain reading of the Settlement Agreement runs contrary to Defendants' position. The Settlement Agreement clearly limits the City's payment of Defendants' attorney's fees to $85,000 but in no way indicates that the $85,000 represented all of Plaintiff's legal fees. (Settlement Agreement ¶ 19.) The Settlement Agreement leaves open the possibility that Plaintiff may be entitled to more compensation for its legal services and expressly provides that "[a]s to all other

costs and attorney's fees [exceeding the $85,000 payment], the parties will bear their own costs and attorney's fees." (Settlement Agreement ¶ 19.)

61. Furthermore, as the Court has already concluded herein, it is unable to resolve issues of material fact at this stage of the proceeding, including whether the Contingency Agreement was signed or whether an hourly fee agreement governed the parties' relationship through resolution of the Cone Denim Action or expired on 19 December 2017. (*See* Rossabi Aff. ¶¶ 36, 41; Scarfone Aff. ¶¶ 12, 35, 45.)

62. Defendants also contend that North Carolina law does not permit Plaintiff to recover in *quantum meruit* based on an "unsigned contingent fee letter[.]" (Br. Supp. 15.) Contrary to Defendants' position that an unsigned contingent fee agreement precludes Plaintiff from proceeding with its *quantum meruit* claim, North Carolina courts have held that while a contingency fee agreement may ultimately be unenforceable, this fact alone does not bar a *quantum meruit* claim. *Robertson v. Steris Corp.*, 234 N.C. App. 525, 537 (2014) ("[T]he fact that an agreement for legal representation was determined to be in violation of the Rules of Professional Conduct and unenforceable is of no consequence where an attorney's right of recovery arises in *quantum meruit*, because the trial court's award of fees is based upon the reasonable value of the attorney's services and not upon the failed agreement.") (cleaned up); *In re Krispy Kreme Doughnuts, Inc.*, 2018 NCBC LEXIS 61, at *23–24 (N.C. Super. Ct. June 20, 2018) ("North Carolina appellate courts have held that an underlying RPC 1.5(c) violation does not necessarily bar any and all recovery of

attorneys' fees and expenses if there is a valid basis for recovery beyond the contract between the attorney and client, such as *quantum meruit*.").

63. Comment 12 to RPC 1.5 provides that this Court's determination of the merits of Plaintiff's claims for its legal fees should be reached by "an application of law to fact and not application of this Rule." N.C.R. PROF'L CONDUCT r. 1.5(c) cmt. 12. As provided in *Robertson*, the North Carolina Supreme Court has made clear that an attorney, absent a contract, is "entitled to recover the amount that is reasonable and customary for work of like kind, performed under like conditions and circumstances." *Robertson*, 234 N.C. App. at 537 (quoting *Forester v. Betts*, 179 N.C. 681, 682 (1920)); *see also Jamerson v. Logan*, 228 N.C. 540, 544–45 (1948) ("Where the plaintiff alleged a contract to pay for services performed, and upon the trial, failed to prove a special contract, but did prove the performance of the services and their value: *Held,* that he was entitled to recover upon *quantum meruit*[.]") Accordingly, should Plaintiff's breach of contract claim fail at a trial on the merits, Plaintiff is permitted to proceed on its alternative claim for *quantum meruit* consistent with North Carolina law.

64. Therefore, the Court DENIES the Motion to the extent Defendants request that the Court award summary judgment to Defendants on Plaintiff's *quantum meruit* claim.

## VI. CONCLUSION

65. For the foregoing reasons, the Court hereby **DENIES** the Motion and Plaintiff's breach of contract claim and *quantum meruit* claim will proceed to trial.

66.     The Court shall set this matter for trial by separate order after consultation with counsel for the parties, consistent with the Guilford County Jury Trial Resumption Plan as implemented in the North Carolina Business Court.

     **SO ORDERED**, this the 5th day of May, 2021.


/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases